Charles Stinson SMITH and Jimmie Dean Smith, Plaintiffs-Appellants,

v.

RUSSELLVILLE PRODUCTION CREDIT ASSOCIATION, et al., Defendants-Appellees.

No. 85–7084.

United States Court of Appeals, Eleventh Circuit.

Dec. 12, 1985.

Joe R. Whatley, Jr., Charles F. Norton, Falkenberry, Whatley & Heidt, Birmingham, Ala., for plaintiffs-appellants.

Bedford, Bedford & Rogers, Robert I. Rogers, Jr., Russellville, Ala., Maynard, Cooper, Frierson & Gale, James L. Goyer, III, Maibeth J. Porter, Birmingham, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Appellants, the Smiths, are lifelong family farmers. Starting in 1967, the Smiths became almost totally dependent on appellee Russellville Production Credit Association ("RPCA") for their credit needs. The RPCA is a federally chartered Production Credit Association ("PCA").

In January 1983, the Smiths negotiated a $92,000 loan from the RPCA, payable on January 1, 1984. In return for this loan, the Smiths mortgaged their house, crops, farm equipment, and RPCA stock. The year 1983 was an economic disaster for the Smiths. As of February 23, 1984, the Smiths owed the RPCA about $74,846, the Smiths having failed to discharge their repayment obligation on January 1, 1984. The Smiths received a certified letter from the RPCA on February 23 demanding payment in full of that amount, such payment to be received no later than March 2, 1984.

The Smiths requested that the RPCA enter into a nondisturbance agreement regarding the Smiths' farm equipment so that they could get a disaster loan from the Farmer's Home Administration and make a crop with the equipment in 1984. Then, on March 2, 1984, the Smiths filed a *pro se* complaint against the RPCA in the United States District Court for the Northern District of Alabama. In their complaint, the Smiths sought compensatory and punitive damages for alleged violations of both federal and state law.

The RPCA, exercising its rights under the security agreement, repossessed the Smiths' farm equipment in June 1984, and applied the sale proceeds to the outstanding loan balance. On September 5, 1984, the United States Small Business Administration ("SBA") purchased the balance of the Smiths' account, eliminating the Smiths' debt to the RPCA.

The *pro se* complaint was consolidated with three other similar cases filed by farmers, and then dismissed without prejudice on April 9, 1984, with leave to amend. The farmers filed an amended complaint on April 30, 1984, which complaint contained eight counts. The amended complaint included allegations that the RPCA had violated the requirements of the Farm Credit Act, 12 U.S.C.A. § 2001 *et seq.*, and the Truth-in-Lending Act ("TILA"), 15 U.S.C.A. § 1605; and that the RPCA was guilty of fraudulent misrepresentation and wrongful foreclosure. The farmers sought compensatory and punitive damages.

On July 26, 1984, the court granted partial summary judgment in favor of the RPCA on two of the counts. After holding a pretrial hearing in December 1984, the court on January 23, 1985, granted partial summary judgment on four of the other counts and on the issue of punitive damages. The district court retained jurisdiction over the remaining state tort claims for fraudulent misrepresentation and wrongful foreclosure.

The Smiths filed a timely notice of appeal of the district court's order. The issues the Smiths raise on appeal are: (1) that the court erred in holding there is no private cause of action under the Farm Credit Act; (2) that the court erroneously determined as a fact that the loan transactions involved in the present case were made for agricultural purposes, and were therefore exempt from the disclosure requirements of the TILA; and (3) that the court erred in holding that the RPCA could not be liable for punitive damages because of sovereign immunity.

## I. Farm Credit Act Does Not Create Private Right of Action

Appellants contend that the Farm Credit Act, 12 U.S.C.A. § 2001 *et seq.*, and the regulations promulgated thereunder provide them with a private right of action against the RPCA. PCAs are required by statute to prepare a program for furnishing credit to "young, beginning, and small farmers." *See* 12 U.S.C.A. § 2207(a). In addition, a federal regulation states that, as a general policy, PCAs shall provide means of forbearance to cooperative borrowers. 12 C.F.R. § 614.4510(d)(1). Appellants contend that these provisions impose affirmative legal duties on PCAs for the

benefit of borrowers, and that borrowers have an implied private right of action to ensure that these duties are fulfilled. Appellants also argue that a statutory provision that PCAs may "sue and be sued," *see* 12 U.S.C.A. § 2093(4), indicates that Congress intended to create an implied private right of action under the Farm Credit Act.

The Farm Credit Act was enacted to improve the income and well-being of American farmers by increasing the availability of sound, adequate, and constructive credit. To accomplish this objective, Congress created a farmer-owned cooperative credit system, one component of which was the PCAs. The Farm Credit Act contains no express provision granting individuals a federal cause of action to enforce the provisions of that act. However, courts have held that a statute which fails expressly to provide a private right of action can sometimes create an implied private right of action, where a private right of action is necessary to effectuate the purpose of the statute. *See Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1515–17 (11th Cir. 1985).

■ In considering whether a statute creates an implied right of action, courts must focus primarily on the question of legislative intent. *Culverhouse, supra,* at 1517; *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). In the present case, this Court must decide whether, in enacting the Farm Credit Act, Congress intended to create an implied right of action on behalf of borrowers such as the Smiths.

■ No private remedy exists in a statute which does not provide private rights to an identifiable class, does not prohibit conduct as unlawful, and whose legislative history is silent on the existence of a private right of action. *Till v. Unifirst Federal Savings & Loan Association,* 653 F.2d 152, 161 (5th Cir. Unit A 1981); *Touche Ross, supra,* 442 U.S. at 576, 99 S.Ct. at 2489. Appellants fail to bring to this Court's attention any language in the legislative history of the Farm Credit Act which would indicate that the act creates a private right of action. Our search revealed no such language. Also, the Farm Credit Act does not prohibit any conduct as unlawful. Thus, in order to hold that Congress intended to create an implied right of action, we must first decide whether the Farm Credit Act creates any affirmative obligations on the part of PCAs and, consequently, creates private rights on behalf of borrowers. If the Farm Credit Act does not impose any affirmative duties on the PCAs, then it follows that there cannot be any private right of action to ensure that those duties are fulfilled.

Appellants contend that a statutory requirement that PCAs prepare a program for furnishing credit to "young, beginning, and small farmers," *see* 12 U.S.C.A. § 2207(a), imposes affirmative duties on the PCAs. This argument must be rejected. It is clear that the statutory provisions creating the PCAs did not confer substantive rights on behalf of any class of farmers to receive credit but, rather, set forth a general goal of channeling credit to the farming community and established the machinery through which to achieve this goal. *See Bowling v. Block,* 602 F.Supp. 667, 670–71 (D.Ohio 1985).

Appellants also argue that a regulation stating that, as a general policy, PCAs shall provide means of forbearance to cooperative borrowers, *see* 12 C.F.R. § 614.-4510(d)(1), imposes an affirmative duty on PCAs and provides the basis for an implied private right of action. Appellants rely on *DeLaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432 (S.D.Georgia 1983), in which a district court held that this regulation imposes a legal duty on PCAs to establish loan servicing techniques and to advise borrowers of these procedures. *Id.* at 1436.

■ In determining whether a regulation has the "force and effect of law," the Supreme Court has distinguished between "substantive rules" on the one hand, and "interpretive rules, general statements of

policy, or rules of agency organization, procedure, or practice" on the other. *Chrysler Corp. v. Brown,* 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979). For a regulation to have the force and effect of law, and thus to be the source of an affirmative legal obligation, it must be a "substantive rule." *United States v. Harvey,* 659 F.2d 62 (5th Cir. Unit B 1981).

In *United States v. Harvey, supra,* 659 F.2d at 62, this Court determined whether a provision in a Veterans Administration ("VA") loan servicing manual imposed a foreclosure avoidance duty on the VA, and created a correlative right in the mortgager to this performance. *Id.* at 63–64. The provision stated: "After the reasons for default have been determined, indulgence may be extended for a reasonable time to a worthy borrower who is unable immediately to begin the liquidation of his arrearage." *Id.* at 63. This Court held that the loan servicing provision did not have the force and effect of law. One of the grounds for this holding was that the provision was not a substantive rule but, instead, was a general statement of agency policy. *Id.* at 64.

■ Like the provision in *Harvey,* the "means of forbearance" regulation in the present case is not a substantive rule but, rather, is a general statement of agency policy. The regulation states that, when banks and associations develop their loan servicing policies and procedures, *"the policy* shall provide a means of forbearance" for borrowers meeting certain criteria. 12 C.F.R. § 614.4510(d)(1) (emphasis added). Although the term "shall" indicates the mandatory nature of this policy, the regulation is nevertheless directed at agency policy, and is not a substantive rule. Accordingly, we hold that 12 C.F.R. § 614.4510(d)(1) does not have the force and effect of law, and does not provide the basis for an implied private right of action on behalf of borrowers such as the Smiths.[1]

■ The Farm Credit Act is far different from the kinds of statutes, creating either affirmative duties or prohibitions, which courts have construed to create implied rights of action in order to ensure that the statutes are effectively enforced. *See, e.g., Culverhouse, supra,* at 1518 (Sections 13(d), 14(d) and 14(e) of the Securities and Exchange Act of 1934 held to create a private right of action). In contrast to such statutes, the Farm Credit Act creates no specific duties or prohibitions for the benefit of a special class. Because the Farm Credit Act imposes no affirmative duties or prohibitions on PCAs, we hold that there is no implied private right of action under the Farm Credit Act.

This conclusion is supported by the fact that, in enacting the Farm Credit Act, Congress specifically provided loan applicants with the right to an informal hearing if there was reason to believe that a loan application was acted upon improperly.[2] *See* 12 U.S.C.A. § 2202. By including this informal hearing provision and no other remedy under the Farm Credit Act, Congress evidenced an intent not to create any private right of action under that Act.

Appellants' final argument in support of an implied right of action, that the inclusion of a "sue and be sued" provision in the Farm Credit Act is evidence that Congress intended to create a private right of action under that act, is completely without merit. The "sue and be sued provision" simply indicates that Congress intended that PCAs, like other private entities, be held accountable for breaking the law and be able to seek relief under appropriate circumstances. The provision does not indicate that Congress intended, in enacting the Farm Credit Act, to create an independent substantive legal basis under which PCAs could be sued.

## II. Loans Were Exempt From TILA Disclosure Requirements

The TILA was enacted in order to promote the informed use of credit by requir-

---

**1.** We disapprove of *DeLaigle v. Federal Land Bank of Columbia, supra,* to the extent that it may be inconsistent with this opinion.

**2.** It is undisputed that appellants failed to request such a hearing.

ing creditors to give meaningful disclosure of credit terms to consumers. 15 U.S.C.A. § 1601(a). However, credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes are exempt from the disclosure requirements of the TILA. 15 U.S.C.A. § 1603(1). "Agricultural purposes" are defined to include, but are not limited to, "the acquisition of farmland, real property with a farm residence, and personal property and services used primarily in farming." 15 U.S.C.A. § 1602(s). The district court found that there was no material issue of fact with respect to the purpose of the January 1983 loan. The court found that the loan was made for agricultural purposes, and that the RPCA therefore had no obligation to comply with the disclosure requirements of the TILA.

Appellants contend their January 1983 loan was not primarily for agricultural purposes, and therefore was subject to the disclosure requirements of the TILA. The Smiths claim that of the $92,000 they borrowed in 1983, about $39,000 was used to refinance or pay off prior loans, and an additional $17,000 was for personal living expenses.

■ A court must look not at how a loan is eventually used but, rather, at the *purpose* of a loan to determine if it is subject to the disclosure requirements of the TILA. *Poe v. First National Bank of DeKalb County*, 597 F.2d 895, 896 (5th Cir.1979). In their loan application dated January 11, 1983, the Smiths listed the following intended uses for the loan proceeds:

| | | |
|---|---|---|
| 1) | 1983 crop expense: | $45,936 |
| 2) | Renewal of 1982 loan: | 28,234 |
| 3) | Payoff to Citizens Bank: | 4,000 |
| 4) | Payment to SBA: | 7,200 |
| 5) | 12 shares of RPCA stock: | 6,000 |
| 6) | Loan fees and credit life insurance: | 630 |
| | Total | $92,000 |

About half of the loan was intended to cover crop expenses, which expenses were clearly agriculturally related. Most of the other expenditures listed in the application were agriculturally related as well. For example, borrowing $28,234 to refinance the 1982 RPCA loan was an alternative to selling off farming assets to repay that obligation. Also, the $7,200 payment to the SBA covered the Smiths' 1983 mortgage payment on their farm residence. This payment was related to "the acquisition of ... real property with a farm residence," which is defined as an "agricultural purpose" under the TILA. 15 U.S.C.A. § 1602(s).

■ The district court properly found that there was no material issue of fact with respect to the agricultural purposes of the January 1983 loan. Because that loan was made primarily for agricultural purposes, the district court was correct to enter summary judgment in favor of the RPCA with respect to appellants' claim under the TILA.

## III. PCAs Cannot Be Liable For Punitive Damages

Appellants' final contention is that, in its order granting partial summary judgment, the district court erroneously held that the RPCA cannot be liable for punitive damages. Although appellants have no remaining federal causes of action, they still have pendent state causes of action for fraudulent misrepresentation and wrongful foreclosure. The district court, in its discretion, properly retained jurisdiction over these claims which would have been time-barred in state court. *See L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984). Because appellants ask for punitive damages in connection with these pendent state claims, it is necessary for this Court to decide whether RPCAs can be held liable for punitive damages.

■ The established rule is that punitive damages cannot be recovered from the United States or its agencies. *Painter v. Tennessee Valley Authority*, 476 F.2d 943, 944 (5th Cir.1973); *Missouri Pacific R.R. v. Ault*, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921). In *Painter v. Tennessee Val-*

*ley Authority, supra,* this Court held that the Tennessee Valley Authority ("TVA") could not be held liable for punitive damages, on the grounds that a federal agency or instrumentality of the United States cannot be liable for punitive damages unless Congress makes a special provision permitting such damages. *Id.* at 944. The fact that Congress permitted the TVA to be sued in contract or tort was held to be inconsequential. *Id.*

 The PCAs were chartered in 1933 and initially funded by government loans. The government loans were completely paid off by 1968. At the present time, PCAs are privately organized, owned, and operated corporations. Like other private organizations, PCAs can sue and be sued. 12 U.S.C.A. § 2093(4). However, despite their "private" characteristics, PCAs remain federal instrumentalities, operated pursuant to Congressional mandate. This status was reaffirmed in a 1971 amendment to the Farm Credit Act of 1933, in which Congress stated that "[e]ach production credit association ... shall continue as a federally chartered instrumentality of the United States." 12 U.S.C.A. § 2091.

A federal instrumentality does not divest itself of the privileges of instrumentality status when it acts more like a privately owned institution than a federal agency. *Matter of Sparkman,* 703 F.2d 1097, 1101 (9th Cir.1983). We therefore hold that punitive damages cannot be awarded against PCAs.

Our holding that punitive damages cannot be awarded against PCAs is supported by the principle of sovereign immunity, which generally bars the award of punitive damages in actions against the United States as sovereign. *See Missouri Pacific R.R. v. Ault, supra,* 256 U.S. at 563–65, 41 S.Ct. at 597. This Court has recently held, "If the relief sought requires payment of monies from the Federal Treasury, interferes with public administration, or compels or restrains the government, the action is deemed to be one against the United States as sovereign." *State of Florida, Department of Business Regulation v.*

*U.S. Dept. of Interior,* 768 F.2d 1248, 1251 (11th Cir.1985). Although punitive damages awards against PCAs would not be paid out of the federal treasury, such awards would interfere with public administration. PCAs fulfill a government mission of channeling credit primarily to farmers. *See* 12 U.S.C.A. § 2096 (PCA loans restricted to farmers and other food producers). Punitive damages would have to be paid from money that could otherwise be targeted to financing tractor equipment purchases, land expansion, or supply needs. The government's purposes in establishing the PCAs would thus be undercut.

The order of the district court granting partial summary judgment is AFFIRMED.