940 F.2d 1538
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Donnie OWENS, Stuart Anderson, doing business as Anderson
Farms, Plaintiff-Appellees,
v.
INTERNATIONAL BUSINESS AND MERCANTILE REASSURANCE COMPANY,
Defendant-Appellant.
 Nos. 89-2242, 89-2271.
 United States Court of Appeals, Tenth Circuit.
 July 26, 1991.
 
 Before JOHN P. MOORE and BALDOCK, Circuit Judges, and ANDERSON, District Judge.*
 ORDER AND JUDGMENT**
 BALDOCK, Circuit Judge.
 
 
 1
 Defendant-appellant International Business and Mercantile Reassurance Company (International) appeals from a jury verdict awarding compensatory and punitive damages to plaintiffs-appellees Donnie Owens (Owens) and Stuart Anderson (Anderson). Our jurisdiction in this diversity case arises under 28 U.S.C. Sec. 1291. We affirm.
 
 Background
 
 2
 Plaintiff Owens cultivated ten farms in the Estancia Valley in central New Mexico. Nine of these farms (Ashcroft, Bass, Carrejo, Kalo, Knox, Montoya, Stephens, Vaughan and H. Vaughan) were operated by Owens. The tenth farm (Schwebach) was operated by Owens and Anderson as a joint venture. Most of Owen's farming effort was devoted to the cultivation of silage to fulfill a supply contract with the Valley Gold dairy. In spring 1986, Owens and Anderson attended a sales presentation by International's representative, Lee Looney. International offered two types of crop insurance, hail and multiperil. Hail insurance is wholly-private insurance which compensates farmers for hail damage to crops, in excess of five-percent of the crop. Multiperil insurance is federally-subsidized insurance in which the federal government reimburses private insurers for claims paid. Multiperil coverage insures against a host of problems which can affect farm production in a given year by guaranteeing up to seventy-five percent of the insured's production.
 
 
 3
 A key factor in the adjustment of multiperil losses is the method of calculating production losses. At the sales presentation, plaintiffs expressed concern that, in determining production under the multiperil policy, International would use county per-acre averages, rather than the much-higher yields from their own farms. According to plaintiffs, Looney assured them that production guarantees would be calculated on the basis of past production on individual farms, or, if past figures were not available, by production on adjacent farms. Plaintiffs claim that, in reliance on these assurances, they purchased both crop hail and multiperil policies from International.
 
 
 4
 In June 1986, a hail storm caused extensive damage to the Schwebach and Vaughan farms and less extensive damage to the other farms. The hail resulted both in direct physical damage to the plant tissue as well as severe soil compaction. International's adjuster originally concluded that no compensable damage had occurred on the Schwebach farm. The adjuster convinced Owens to sign a claim withdrawal form, although Owens never intended to withdraw his claims. The parties disputed the extent of the damage and the calculation of production guarantees under the multiperil policy, including 1986 production yields. Owens sought to cease cultivation of the heavily-damaged Schwebach farm and declare the farm a total loss, but International never provided the necessary assurances. With the exception of a partial payment for casualty losses, International never paid plaintiffs for the 1986 crop damage.
 
 
 5
 Plaintiffs sued International alleging breach of contract, promissory estoppel, negligent misrepresentation, fraudulent misrepresentation, bad faith and violation of the New Mexico Unfair Trade Practices Act, N.M.Stat.Ann. Secs. 57-12-1 to 57-12-15 (1987 Repl.Pamp. & 1990 Cum.Supp.), and the Unfair Insurance Practices Act, N.M.Stat.Ann. Secs. 59A-16-1 to 59A-16-30 (1988 Repl.Pamp. & 1990 Cum.Supp.) In addition to payment under the policy, Owens sought consequential damages for lost business opportunities, loss of credit, loss of equipment due to repossession, loss of the Valley Gold dairy contract, loss of his feed store and loss of his farming operation. He also sought punitive damages. Anderson sought consequential damages for lost business opportunities due to the loss of the Schwebach joint venture and Valley Gold contract, and punitive damages. By special interrogatories, the jury returned a verdict for the plaintiffs on all claims except fraudulent misrepresentation. The jury awarded damages to each plaintiff as follows:
 
 
 6
 Owens
Casualty losses under crop hail policy $ 107,454
Casualty losses under multiperil policy 148,740
Losses from futile cultivation of Schwebach 17,500
Damages resulting from repossessed equipment 215,869
Damages from lost credit 120,000
Damages from lost Valley Gold contract 350,000
 ----------
Subtotal $ 959,563
Punitive Damages 1,500,000
 ----------
Total $2,459,563
 ----------
 ----------
Anderson
Casualty losses under crop hail policy $ 64,410
Casualty losses under multiperil policy 40,707
Losses from futile cultivation of Schwebach 17,500
Damages from lost Valley Gold contract 150,000
 ----------
Subtotal $ 272,617
 ----------
Punitive Damages 500,000
 ----------
Total $ 772,617
 ----------
 ----------
 
 I. Coverage Under Crop Hail Policy
 
 7
 The crop hail policy provided coverage for "direct loss" of insured crops caused by hail. International argued that a "direct loss" only occurs when hail physically damages the tissue of the crop. Plaintiffs countered that soil compaction caused by hail was a compensable "direct loss" under the policy. The district court rejected International's argument and instructed the jury in pertinent part as follows:
 
 
 8
 The Court has determined as a matter of law that, for crop damage to be a covered loss under the Crop Hail Policy, the damages must be a direct consequence of hail. The Policy does not require that the crop damage have resulted from direct impact of hail upon the plants.
 
 
 9
 I R. doc. 397, instr. 13a. International argues that this instruction is based upon misinterpretation of the contract.
 
 
 10
 We review the district court's state law determinations de novo. Salve Regina College v. Russell, 111 S.Ct. 1217, 1225 (1991). Under New Mexico law, the words in an insurance contract must be given their ordinary meaning. Safeco Ins. Co. v. McKenna, 565 P.2d 1033, 1037 (N.M.1977). The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand those words to mean. Ivy Nelson Grain Co. v. Commercial Union Ins. Co., 453 P.2d 587, 588 (N.M.1969). Any ambiguity in the insurance contract is resolved against the insurer. Id. at 589. Construction of a contract, insurance or otherwise, poses a question of law for the court to decide; only when construction of a contract depends on extrinsic evidence is a factual issue created for the jury's resolution. See Valdez v. Cillessen & Son, Inc., 734 P.2d 1258, 1264 (N.M.1987).
 
 
 11
 All losses directly traceable to hail are comprehended under a hail insurance policy. 5 J. Appleman, Insurance Law and Practice, Sec. 3148 at 476 (1970); 10A G. Couch, Couch on Insurance, Sec. 42:364 at 480 (2d ed. 1982). A "direct loss" under a hail insurance policy "is one proximately caused by the hazard insured against." Southall v. Farm Bureau Mut. Ins. Co., 632 S.W.2d 420, 421 (Ark.1982). See, e.g., Harris v. Michigan Mutual Hail Ins. Co., 173 N.W. 533, 537 (Mich.1919) (hail damage to fertilized blossoms compensable under hail policy protecting loss to fruit); Stephanie v. Consumers Mut. Ins. Co., 74 N.W.2d 116, 118 (Minn.1955) (water damage after roof had been damaged by hail storm constituted direct loss under hail policy); Strother v. North Carolina Farm Bureau Mut. Ins. Co., 370 S.E.2d 82, 83-84 (N.C.App.1988) (collapse of greenhouses from weight of accumulated sleet constituted direct hail loss under multiperil policy), review denied, 373 S.E.2d 556 (N.C.1988); Reeves v. National Fire Ins. Co., 170 N.W. 575, 577 (S.D.1919) (rust damage to crop loss directly traceable to hail). Here, plaintiffs contended that the Schwebach farm soil was compacted by the hail, resulting in a restricted air supply to the corn plants which inhibited root development. Such damages, if proven, would be a direct and proximate result of the hail storm; no intervening causes are alleged to have caused the soil compaction. Construing the term "direct loss" according to its ordinary meaning, we therefore conclude that a reasonable person in the position of the insured would understand the term to encompass soil compaction directly traceable to hail. See Safeco, 565 P.2d at 1037; Ivy Nelson Grain, 453 P.2d at 588. Thus the district court correctly construed the crop hail policy to encompass soil compaction. See Appleman, Sec. 3148 at 476; Couch, Sec. 42:364 at 480.
 
 II. Sufficiency of Evidence
 
 12
 International argues that insufficient evidence exists to support the jury's determination and calculation of damages, and that the district court should have granted its motion for judgment notwithstanding the verdict (j.n.o.v.). "When reviewing a district court's denial of j.n.o.v., we view the evidence, together with the inferences therefrom, in the light most favorable to the jury's verdict." Wheeler v. John Deere Co., Nos. 90-3080 & 90-3120, slip. op. at 27 (10th Cir. May 16, 1991). A j.n.o.v. is appropriate "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." J.I. Case Credit Corp. v. Crites, 851 F.2d 309, 311 (10th Cir.1988).
 
 A.
 
 13
 Concerning the Ashcraft, Bass, Carrejo, Kalo, Knox, Montoya and Stephens farms, International first claims insufficient evidence exists to support a thirty-percent loss due to hail. We disagree. The jury heard testimony from Clement Ray Austin, Owen's employee, that all the farms suffered hail damage in varying degrees. III R. 50-53. Owens and his former wife also testified to the pervasive hail damage among all the farms. II R. 198; IV R. 104. Finally, Owens's expert witness estimated the hail damage on the other farms by comparing 1986 production to that of previous years. The expert then subtracted 1986 production from farm production in 1984 or 1985 to arrive at the lost production.[3] III R. 162-72. While this method of calculation is not beyond question, we cannot say that the evidence on Owens's damages is so overwhelmingly preponderant in favor of International's position that a reasonable jury could not accept the calculations advanced by Owens.
 
 B.
 
 14
 International next questions the sufficiency of the evidence to support the jury's finding that the Schwebach farm suffered one-hundred-percent damage and the Vaughan farm, eighty-percent. Owens testified that between thirty and thirty-three acres of the Vaughan farm were damaged heavily by hail. R. IV 81. He also testified that Schwebach did not produce in 1986. R. IV 121. The jury also heard expert testimony estimating the loss at each farm. International recognizes that the most probative testimony concerning damages on the Schwebach and Vaughan farms was by Owens and Anderson, and suggests that this testimony should carry less weight on appeal. Such credibility determinations lie within the province of the jury, and on appeal we may not second-guess the jury. Sufficient record evidence supports the finding of damages.[4]
 
 C.
 
 15
 International next challenges the sufficiency of the evidence to establish Owens's actual production from his farming operations, a determination critical to calculating his damages under the multiperil policy. No explanation is provided as to how plaintiffs' proof was inadequate. The jury heard evidence that Owens either shipped his 1986 harvest to the Valley Gold dairy or else stored the silage in bags on the farm. II.R. 248-49; IV R. 118-27. Plaintiffs' expert calculated 1986 production by adding the weight slips from the Valley Gold shipments (10,496.7 tons) to the estimated weight of silage stored in bags (1,467.7 tons) to reach a total of 11,964 tons. III R. 169. Although this method may not be exact, it is an estimate which provided a reasonable basis for the jury's verdict.
 
 D.
 
 16
 International urges that it was entitled to j.n.o.v. on Anderson's claim because insufficient evidence exists that Anderson relied on Looney's misrepresentations. This argument is meritless. Anderson testified explicitly that he relied on Looney's representations in deciding to pursue the joint venture with Owens. II R. 122.
 
 E.
 
 17
 International also challenges the sufficiency of the evidence to support the jury's award of consequential damages resulting from: (1) Owens's loss of equipment due to repossession, (2) Owens's loss of credit, and (3) Owens's and Anderson's loss of business. Expert testimony and trial exhibits supported an estimate of Owens's damages due to the loss of equipment. III R. 145-57. Owens testified that he was unable to secure credit after the disastrous 1986 season. IV R. 140-48. He further discussed the financial effect this had on his businesses. IV R. 169-75. Finally, Anderson testified about the Schwebach venture's losses, both in terms of direct economic losses and unnecessary equipment purchases. II R. 140-47.
 
 
 18
 International responds that Owens was in dire financial straits before the 1986 growing season and that his businesses would have failed regardless. International again argues that the evidence supporting plaintiffs' consequential damages comes primarily from personal testimony which is inherently unreliable. But the task of choosing between competing versions of events and evaluating the credibility of witnesses rests with the jury. Sufficient evidence supports the jury's determination of consequential damages.
 
 III. Exclusion of Evidence
 
 19
 International argues that the district court erred in excluding evidence of Owens's 1984 claim experience and the failure to report the proceeds of this claim to the Internal Revenue Service. We review a district court's exclusion of evidence for abuse of discretion. Comcoa, Inc. v. NEC Telephones, Inc., 931 F.2d 655, 663 (10th Cir.1991).
 
 
 20
 Evidence of prior insurance claims frequently is more prejudicial than probative. See E. Cleary, McCormick on Evidence Sec. 196 at 577-80 (3d ed. 1984). No evidence suggests that Owens's prior claim was fraudulent and the jury heard evidence that Owens had prior experience with crop insurance. See Warner v. Transamerica Ins. Co., 739 F.2d 1347, 1350 (8th Cir.1984) (in case involving business fire, exclusion of evidence concerning previous fire at insured's home upheld; no evidence either fire was deliberate and evidence not probative of insured's familiarity with insurance claims); II R. 10-13. The district court did not abuse its discretion in excluding evidence of the prior claim.
 
 
 21
 As to Owens's failure to report proceeds from his prior insurance claim to the IRS, the district court's decision that this evidence was too prejudicial in relation to relevance plainly was not an abuse of discretion. See Fed.R.Evid. 403, 404(b); LeSueur Creamery, Inc. v. Haskon, Inc., 660 F.2d 342, 350 (8th Cir.1981), cert. denied, 455 U.S. 1019 (1982).
 
 IV. Expansion of Multiperil Coverage
 
 22
 Without citing any authority, International argues that plaintiffs could not obtain coverage level guarantees in excess of that available under the federally subsidized program. This argument is flawed. "An insurance company is bound by the construction placed upon a provision of the policy by its agent provided the agent is acting within the scope of his actual or apparent authority...." 4 Couch on Insurance Sec. 26A:45 at 91-92. See Gilmore v. Constitution Life Ins. Co., 502 F.2d 1344, 1348-49 (10th Cir.1974); Pribble v. Aetna Life Ins. Co., 501 P.2d 255, 259-60 (N.M.1972). An agent's apparent authority is "such authority as a reasonably prudent person naturally would suppose the agent to possess in view of the insurer's conduct in clothing the agent with the trappings of actual authority." Ellingwood v. N.N. Investors Life Ins., 805 P.2d 70, 71 (N.M.1991). Whether an insurance agent possesses authority to bind his principal is a question for the jury whenever facts are in dispute. Id.
 
 
 23
 Three witnesses testified that International's agent, Lee Looney, told plaintiffs that multiperil guarantees would be based upon the insured's past production or production from adjacent farms. No dispute exists that Looney was acting within the scope of his authority when he made these representations. Looney's statements may have exceeded the terms of the insurance policy issued pursuant to a federally subsidized program, but International still is liable for the statements. Indeed, federal regulations in effect at the time plaintiffs entered into the insurance contract explicitly recognized that an insured who relies in good faith upon an insurance agent's misrepresentation is entitled to indemnification in accord with his reliance. See 7 C.F.R. Sec. 432.5 (1986).
 
 V. Accord and Satisfaction
 
 24
 According to International, Owens's acceptance of a check for losses arising out of the Schwebach farm constituted an accord and satisfaction concerning multiperil policy claims.[5] Accord and satisfaction is an affirmative defense which must appear in a party's pleading. Fed.R.Civ.P. 8(c). Failure to affirmatively plead such a defense in the district court precludes this court from considering it for the first time on appeal. Horwitz v. Board of Medical Examiners, 822 F.2d 1508, 1512 (10th Cir.), cert. denied, 484 U.S. 964 (1987). International failed to plead affirmatively accord and satisfaction when in district court; consequently, we decline to address the issue any further.
 
 VI. Punitive Damages
 A.
 
 25
 Concerning multiperil crop insurance, International contends that it acted as an agent or instrumentality of the Federal Crop Insurance Corporation (FCIC) and consequently is immune from punitive damages. See Missouri Pac. R.R. Co. v. Ault, 256 U.S. 554 (1921). In advancing this contention, International places principal reliance on Smith v. Russellville Prod. Credit Ass'n, 777 F.2d 1544 (11th Cir.1985). In Smith, the Eleventh Circuit held that privately-owned Production Credit Associations (PCAs) are federal instrumentalities immune from punitive damages. Id. at 1550.
 
 
 26
 International's argument depends upon the strength of the analogy between International and a PCA. The Smith court reasoned that, "despite their 'private' characteristics, PCAs remain federal instrumentalities, operated pursuant to Congressional mandate." Id. at 1550. As support, the court noted that Congress stated explicitly that each PCA " 'shall continue as a federally chartered instrumentality of the United States.' " Id. (quoting 12 U.S.C. Sec. 2091). In contrast, the district court found that International as a re-insurer was not so linked to the federal government. "While it is clear that the FCIC reserves the right to impose certain requirements on the private re-insuring company, it does not follow therefrom that all activities and undertakings of the re-insurance company are being supervised by the Federal Government." II R. 24. International "is simply a private insurer that participates in the crop insurance for its own benefit and not for the benefit of the FCIC." II R. 25. Because the district court found no agency relationship between International and the FCIC, id. at 25,[6] and because such a relationship finds no support in the applicable statutes and regulations, International cannot be treated as an instrumentality of the United States immune from punitive damages. See generally Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n, 885 F.2d 266, 273-74 (5th Cir.1989) (punitive damages against savings and loan association upheld even though association taken over by FSLIC after judgment; funds ceased to be assets of association at the time of judgment and, therefore, were not under FSLIC's control).
 
 B.
 
 27
 International challenges on sufficiency grounds the award of punitive damages. Under New Mexico law, reckless or grossly negligent conduct by an insurer in settling a claim justifies an award of punitive damages; fraud is not required. See Jessen v. National Excess Ins. Co., 776 P.2d 1244, 1246-47 (N.M.1989). Punitive damages are appropriate when a preponderance of the evidence supports such a finding. Id. at 1246. Given the fiduciary relationship and the unequal bargaining position between the parties, punitive damages in insurance cases may be awarded under the above standard, which is slightly more relaxed than the standard in ordinary cases. Romero v. Mervyn's, 784 P.2d 992, 998 n. 2 (N.M.1989). See also Suggs v. State Farm Fire & Cas. Co., 833 F.2d 883, 890-92 (10th Cir.1987) (interpreting New Mexico law), cert. denied, 486 U.S. 1007 (1988).
 
 
 28
 The evidence indicates that International's insurance adjusters in this case admittedly knew nothing about raising corn and adjusting this type of loss. III R. 20-21. The jury heard testimony that International's investigation of plaintiffs' claim was cursory, inadequate, untimely, and below industry standards, and that International acted improperly (and in decided preference to its own interests) in requesting withdrawal of a claim rather than considering a genuine dispute. III R. 77-85. Testimony also indicated that International was attempting to juggle the crop hail policy against the multiperil policy to assure reimbursement by the federal government. A reasonable jury could conclude by a preponderance of the evidence that International acted recklessly and with gross negligence in settling plaintiffs' claim. Thus, sufficient evidence supports the punitive damages and we may not undo the jury's award.
 
 C.
 
 29
 Finally, International contends that the jury's award of punitive damages violated its fifth amendment right to due process of law. Although juries retain discretion to award punitive damages, the fifth amendment requires that such discretion be "exercised with reasonable constraints" and be the product of "rational decision making," involving an "individualized assessment" of appropriate factors. Pacific Mut. Life Ins. Co. v. Haslip, 111 S.Ct. 1032, 1044 (1991). Here, the district court instructed the jury that:
 
 
 30
 In the event you find that plaintiff should recover either actual or nominal damages, and if you further find that the acts of defendant were willful, wanton, malicious, reckless, grossly negligent, fraudulent or in bad faith, then you may award exemplary or punitive damages.
 
 
 31
 Such additional damages are awarded for the limited purpose of punishment and to deter others from the commission of like offenses.
 
 
 32
 The amount of exemplary or punitive damages must be based on reason and justice taking into account all the circumstances, including the nature of the wrong and such aggravating and mitigating circumstances as may be shown. The amount awarded, if any, must be reasonably related to the actual damages and injury and not disproportionate to the circumstances.
 
 
 33
 I R. doc. 396, instr. 42 (emphasis supplied). This instruction adequately constrained the jury's discretion and fostered a rational decision making process involving individualized factors. The jury was informed of the express purpose of punitive damages and that such damages must be based upon reason and related to actual damages. Further, the jury was directed to consider the nature of the insurer's wrong, adjusted for mitigating or aggravating circumstances. Hence, the jury's award of punitive damages did not violate due process. See Haslip, 111 S.Ct. at 1044.
 
 VII. Attorney's Fees
 
 34
 International finally argues that the district court's award of attorney's fees to plaintiffs pursuant to the New Mexico Unfair Trade Practices Act was erroneous because the statute in effect at the time the action was commenced required a finding of "willfulness." Compare 1977 N.M.Laws ch. 181, Sec. 3 (prior version of N.M.Stat.Ann. Sec. 57-12-10(C)(2)) with N.M.Stat.Ann Sec. 57-12-10(C) (1987 Repl.Pamp.) (current version). The New Mexico Constitution provides: "No act of the legislature shall affect the right or remedy of either party, or change the rule of evidence or procedure, in any pending case." N.M. Const. art. IV, Sec. 34. Standards governing the award of attorney's fees clearly affect the rights of private parties in civil suits, thus the prior statute applies. See Hillelson v. Republic Ins. Co., 627 P.2d 878, 880 (N.M.1981) (change in statutory interest rate affected rights of parties, rate in effect at time action commenced applied). However, under either statute, a finding of "willfulness" was implicit in the jury's verdict on this claim given the district court's instruction that, in order to impose liability under the Act, International had to knowingly make false statements to plaintiff in connection with crop insurance. See I R. doc. 396, instr. 9. The jury had to determine that International's violation of the Act was willful to impose liability in accordance with the instruction. The requisite finding of willfulness having been made, International's argument on this point must be rejected.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The jury's determination of casualty losses was reduced by a previous partial payment by International to Owens
 
 
 [2]
 The jury's determination of casualty losses was reduced by a previous partial payment by International to Anderson
 
 
 [3]
 International argues that the expert's exhibit setting forth the percentage of hail damage on the other farms lacked any evidentiary foundation. However, at trial International stipulated that the information the expert relied upon was in evidence. III R. 168, 172. International is bound by its stipulation. See Wheeler v. John Deere Co., Nos. 90-3080 & 90-3120, slip op. at 12-13 (10th Cir. May 16, 1991)
 
 
 [4]
 International devotes considerable portions of its brief arguing that Owens's alleged failure to comply with proper claims procedure should preclude his recovery. See Appellants' Brief at 27-29. International was free to advance this argument below, and we decline to consider it for the first time on appeal
 
 
 [5]
 The jury's award was offset by this partial payment
 
 
 [6]
 International does not contend that the district court's factual findings on the lack of an agency relationship are clearly erroneous