**T.A. GRANT III**

v.

**FARM CREDIT BANK OF TEXAS, REW Enterprises, Inc., FCS Servicing, The Law Firm of Milling, Benson, Woodward, Hillyer, Pierson & Miller, Wesley Slay and Herbert Haynes**

**Civ. A. No. 92–0916.**

United States District Court,
W.D. Louisiana,
Monroe Division.

Oct. 27, 1992.

---

Thomas A. Grant, III, pro se.

Jean Marie Sweeney, Mark P. Dauer, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA, for Farm Credit Bank of Texas and FCS Servicing.

Ellen Rose Eade, McLeod, Verlander, Eade & Verlander, Monroe, LA, for REW Enterprises, Inc.

William E. Wright, Jr., Robert E. Kerrigan, Jr., Deutsch Kerrigan & Stiles, Jean Marie Sweeney, Mark P. Dauer, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA, for Milling, Benson, Woodward, Hillyer, Pierson & Miller, Wesley Slay and Herbert Haynes.

LITTLE, District Judge.

### RULING

Plaintiff T.A. Grant III brings this suit seeking damages, injunctive relief, and recognition of rights that he claims in certain immovable property located in Moorehouse, Ouachita, and Union Parishes. In 1983 and 1985, Plaintiff granted mortgages on the property as security for approximately $16.5 million in loans that he borrowed from the Federal Land Bank of Jackson (FLBJ). Plaintiff defaulted in January 1986 and one month later brought suit in Louisiana state court seeking, among other things, to enjoin FLBJ from foreclosing. In May 1988, Farm Credit Administration appointed REW Enterprises, Inc. (REW) as receiver for FLBJ. The trial court denied REW's motion for summary judgment, but the Court of Appeal of Louisiana for the Second Circuit reversed and remanded for entry of judgment in favor of the defendants. *See Grant v. Federal Land Bank*, 559 So.2d 148 (La.Ct.App.2d Cir.), *writs denied*, 563 So.2d 886 and 563 So.2d 887 (La.1990), *cert. denied*, 498 U.S. 922, 111 S.Ct. 301, 112 L.Ed.2d 254 (1990). In June 1990, REW conveyed its interest in the notes and collateral to Farm Credit Bank of Texas (FCBT). On 13 July 1990, the trial court entered judgment in favor of FCBT for approximately $31 million and recognized the mortgages. The Court of Appeal dismissed Plaintiff's appeals on 25 September 1991. *See Grant v. Federal Land Bank*, 586 So.2d 685 (La.Ct.App.2d Cir.1991). On 26 February 1992, in execution of the judgment, FCBT had the mortgaged property seized and sold at public auction, where FCBT purchased it on a bid for approximately $14 million. The property was appraised at that time as having a fair market value of $16.9 million. A deficiency of approximately $18 million remains due on the $31 million judgment debt. The sheriff's deed to the property was delivered to FCBT on 13 March 1992. On 27 March 1992, FCBT's executive director Herbert Haynes notified Plaintiff of FCBT's election to sell the property and of Plaintiff's right of first refusal under 12 U.S.C. § 2219a. On 13 April 1992, Plaintiff counteroffered $16.9 million in exchange for the property *and* FCBT's release of all claims against Plaintiff. On 1 May 1992, after the thirty-day period for submission of offers by previous owners had expired, Haynes informed Plaintiff that no exercise of first refusal rights had occurred.

Plaintiff now brings this suit claiming violations of his rights under the Farm Credit Act of 1971, the Agricultural Credit Act of 1987, and Louisiana tort law. Plaintiff alleges that the defendants, all motivated by a personal animus against Plaintiff, have conspired in an elaborate scheme of the most heinous and objectionable type of behavior with the single goal of driving Plaintiff to financial ruin.

Before the court are four motions: (1) defendant REW's motion to dismiss pursuant to Rule 12(b)(6); (2) defendants Wesley Slay and Herbert Haynes' motion to dismiss pursuant to Rule 12(b)(6); (3) defendant Milling, Benson, Woodward, Hillyer, Pierson & Miller's motion to dismiss pursuant to Rule 12(b)(6); and (4) FCBT's motion for summary judgment. We will first address the motions to dismiss.

### I. MOTIONS TO DISMISS OF REW ENTERPRISES, INC., WESLEY SLAY, HERBERT HAYNES, AND THE LAW FIRM OF MILLING, BENSON, WOODWARD, HILLYER, PIERSON & MILLER

Plaintiff argues that the allegations in his amended complaint state a cause of action for flagrant bad faith abuse of discretionary powers under the Farm Credit Act of 1971 and the Agricultural Credit Act of 1987. Plaintiff also argues that the allegations in his complaint state claims under Louisiana law for intentional infliction of emotional dis-

tress, abuse of process, and intentional interference with contractual rights.

▪ When considering a motion to dismiss for failure to state a claim, we must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). The motion should be granted "only if the plaintiff can prove no set of facts that would entitle him to the relief for which he prays." *Id.*

A. *Violations of The Farm Credit Act of 1971 and The Agricultural Credit Act of 1987*

▪ Plaintiff alleges that the defendants have conspired to bring him to financial ruin by denying his borrower's rights under the Farm Credit Act of 1971 and its amendment, the Agricultural Credit Act of 1987. 12 U.S.C.S. §§ 2001–2279 (Law.Co-op 1984 & Supp.1992). The defendants argue that Plaintiff has no express or implied private right of action under these provisions. We agree. Every circuit that has confronted the issue has held that no private right of action can be inferred in favor of borrowers for violations of the Farm Credit Act of 1971. *See Redd v. Federal Land Bank,* 851 F.2d 219 (8th Cir.1988); *Bowling v. Block,* 785 F.2d 556 (6th Cir.), *cert. denied sub nom. Bower v. Lyng,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986); *Smith v. Russellville Prod. Credit Ass'n,* 777 F.2d 1544 (11th Cir. 1985). The same is true for the Agricultural Credit Act of 1987. *See Saltzman v. Farm Credit Services, ACA,* 950 F.2d 466, 467–469 (7th Cir.1991); *Zajac v. Federal Land Bank,* 909 F.2d 1181, 1182–83 (8th Cir.1990) (en banc); *Griffin v. Federal Land Bank,* 902 F.2d 22, 24 (10th Cir.1990); *Harper v. Federal Land Bank,* 878 F.2d 1172, 1173 (9th Cir.1989), *cert. denied,* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990). In light of legislative history and the comprehensive administrative remedial scheme created by the acts, these courts have concluded that Congress did not intend for borrowers to enforce the provisions through private law suits. *See, e.g., Harper,* 878 F.2d at 1175–77; *Smith,* 777 F.2d at 1547–48. We adopt the reasoning of these courts and therefore conclude that Plaintiff has no cause of action against the defendants for any alleged violation of the Farm Credit Act of 1971 and Agricultural Credit Act of 1987.

B. *State Tort Claims*

We now turn to the state tort claims. Plaintiff alleges that the defendants have engaged in a conspiracy and series of activities designed to ruin Plaintiff financially, to inflict intentionally emotional distress upon Plaintiff, and to interfere intentionally with Plaintiff's contractual rights. Plaintiff also alleges that the defendants have committed abuse of process in the course of carrying out this dastardly scheme.

1. Intentional Infliction of Emotional Distress

▪ To state a claim for intentional infliction of emotional distress under Louisiana law, the plaintiff must allege: (1) extreme and outrageous conduct; (2) severe emotional distress; and (3) an intent to cause severe emotional distress. *See White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991). To give rise to this cause of action, the defendant's conduct must be "beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community." *Id.* at 1210–11. Plaintiff alleges no act committed by any of the defendants that could possibly be construed as the sort of extreme and outrageous conduct required to state a cause of action for intentional infliction of emotional distress under this standard. *See id.* at 1209–11. Moreover, Plaintiff fails to allege severe emotional distress. Plaintiff clearly fails to state a cause of action for intentional infliction of emotional distress against any of the defendants.

2. Intentional Interference with Contractual Rights

▪ Louisiana has adopted a very narrow form of the tort of intentional interference with contractual rights. In *9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228 (La.1989), the Louisiana Supreme Court recognized "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer

and a third person." *Id.* at 234. Plaintiff points to no particular allegations that might give rise to the claim. Thus, we must search for any allegation that might arguably fit within the narrow cause of action laid out by the Louisiana Supreme Court in *9 to 5 Fashions, supra.* We find none.

Plaintiff has alleged nothing that could possibly be construed as tortious interference by any of the defendants. More importantly, Plaintiff fails to allege the existence of a contractual right with which the defendants could interfere. At the time REW sold and assigned the note to FCBT, the Louisiana Court of Appeal had already decided in favor of REW on the note and mortgage and ordered dismissal of Plaintiff's claims. Thus, from its conception, the relationship between FCBT and Plaintiff was not a contractual one, but one of judgment creditor and judgment debtor. *See Schouest v. Franke,* 526 So.2d 1342 (La.Ct.App. 5th Cir.), *writ denied,* 531 So.2d 473 (La.1988). The obligations that FCBT owed to Plaintiff did not derive from contract, but rather from the federal statutes governing Farm Credit System institutions and from Louisiana laws governing foreclosure and the collection of a judgment debt.

Even if FCBT had owed a contractual right to Plaintiff, Plaintiff would nevertheless fail to state a cause of action for tortious interference against Slay and Haynes because corporate officers are immune from liability for intentional interference "committed within the scope of corporate authority for the corporation's benefit." *9 to 5 Fashions,* 538 So.2d at 232. Although Plaintiff argues that Slay and Haynes did not act in FCBT's best interest, it is obvious even from the face of Plaintiff's complaint that these two officers were at all times acting within the scope of their authority as officers of FCBT and were simply attempting to collect the judgment debt owed by Plaintiff to FCBT. None of Plaintiff's allegations against Slay and Haynes falls within the narrow cause of action laid out in *9 to 5 Fashions.*

The Milling firm is legal counsel for FCBT. Plaintiff alleges that the Milling firm orally agreed to draft a document concerning a group of investors assembled by Plaintiff but then denied making such an agreement. Even if true, this allegation does not state a claim for tortious interference with a contractual right because Plaintiff had no contract with FCBT.

### 3. Abuse of Process

To state a claim for abuse of process under Louisiana tort law, a plaintiff must allege two essential elements: (1) an ulterior purpose; and (2) a willful act in the use of process that is not in the regular conduct of the proceeding. *See, e.g., Weldon v. Republic Bank,* 414 So.2d 1361, 1365 (La. Ct.App. 2d Cir.1982). Even if a party has an ulterior purpose in making use of some legal process, no cause of action exists unless there has been some abuse. *Id.* As for Plaintiff's claims against defendants REW, Slay, and Haynes, Plaintiff fails to allege even a use of process, much less an improper use. Plaintiff alleges that the Milling firm scheduled depositions and then failed to appear. Even if true, this is not a use of process outside the regular conduct of the proceeding. Plaintiff does not specify during which of his many law suits that these events allegedly occurred, but discovery matters such as this are within the jurisdiction and control of the court governing the case. If such conduct persists, it perhaps should prompt a motion to the court for intervention in the discovery process. But it is not the sort of misuse of legal process that gives rise to a cause of action for abuse of process.

For these reasons, we find that Plaintiff has stated no cause of action against REW, Wesley Slay, Herbert Haynes, or the law firm of Milling, Benson, Woodward, Hillyer, Pierson & Miller. Accordingly, the defendants' motions to dismiss are GRANTED.

### II. FCBT'S MOTION FOR SUMMARY JUDGMENT

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that no genuine issue as to any material fact exists and that the defendant is entitled to judgment as

a matter of law. Fed.R.Civ.Proc. 56. In our analysis, we view the facts and inferences from the evidence in the light most favorable to the nonmoving party. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.), *reh'g denied,* 920 F.2d 259 (5th Cir.1990). Before we can find that no genuine issues of material fact exists, we must be satisfied that no reasonable trier of fact could have found for the nonmoving party. *Id.* But the nonmoving party may not rest solely on denials contained in the pleadings; he must also set forth specific facts showing that a genuine issue exists for trial. Fed.R.Civ.P. 56(e); *see also Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *reh'g denied,* 961 F.2d 215 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Mere conclusory rebuttals by the nonmoving party will not defeat a motion for summary judgment. *Id.* at 1131.

For the reasons stated in our ruling on the motions to dismiss, we hold that no private right of action exists under the Farm Credit Act of 1971 or the Agricultural Credit Act of 1987. Thus, FCBT is entitled to judgment in its favor as a matter of law on Plaintiff's claims regarding alleged violations of these provisions.

As we discussed in our ruling on the motions to dismiss, a claim for intentional infliction of emotional distress under Louisiana law requires a showing of extreme and outrageous conduct and severe emotional harm. *See White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991). The evidence reveals no act of FCBT that could be characterized as extreme and outrageous. Nor does Plaintiff offer any evidence that he has suffered severe emotional harm. Consequently, we find that FCBT is entitled to judgment as a matter of law on this claim.

With regard to Plaintiff's claim of intentional interference with contractual rights, Plaintiff has offered no evidence that FCBT has committed any act that would amount to tortious interference as recognized in *9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228 (La.1989). Indeed, Plaintiff fails to establish the existence of any contractual rights with which FCBT might of interfered. The evidence shows that at the time REW sold and assigned Plaintiff's note and mortgage to FCBT, the Louisiana Court of Appeal had already ordered that judgment on the debt be entered in favor of REW. Thus, the relationship between FCBT and Plaintiff was one of judgment debtor and judgment creditor, and any obligations that FCBT owed to Plaintiff regarding collection of the debt were statutory, not contractual. Plaintiff points to no other contractual right with which FCBT might of interfered. Consequently, we find that no genuine issues as to material facts exist and FCBT is therefore entitled to judgment in its favor as a matter of law.

██ To establish a claim for abuse of process, the plaintiff must show an ulterior purpose and a willful act in the use of legal process that is not in the regular conduct of the proceeding. *See, e.g., Weldon v. Republic Bank,* 414 So.2d 1361, 1365 (La.Ct.App. 2d Cir.1982). The only allegations that Plaintiff offers in support of this claim is that FCBT has refused to make discovery of certain documents and FCBT has scheduled depositions with Plaintiff and failed to appear. Even if Plaintiff had offered evidence to support these allegations, these acts would not amount to abuse of process. As we stated in our ruling on the Milling firm's motion to dismiss, discovery matters such as these are not outside the regular conduct of the proceeding and are within the control of the court governing the case. Accordingly, we find that FCBT is entitled to judgment as a matter of law on this claim as well.

For these reasons, defendant FCBT's motion for summary judgment is GRANTED.