R.A. BARTON, et al., Plaintiffs,

v.

AMERICAN RED CROSS,
et al., Defendants.

Civ. A. No. 91–T–1001–S.

United States District Court,
M.D. Alabama, S.D.

Sept. 29, 1992.

James Prestwood, Andalusia, Ala., Alvin Prestwood, Joseph Borg, Ben Fuller, Montgomery, Ala., for plaintiffs.

Tony Miller, Jeffrey Grantham, Birmingham, Ala., Bruce Chadwick, Kathleen Behan, Washington, D.C., for defendants.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiffs R.A. Barton and her husband and two sons charge defendants American Red Cross and Eoline McGowan, M.D., with negligent and wanton failure to screen properly for HIV-infected blood that was given to Mrs. Barton in a transfusion.[1] The Bartons seek relief under the Alabama Medical Liability Act (AMLA), Ala.Code 1975 § 6-5-542.[2] This cause is before the court on a motion for summary judgment filed by the Red Cross and Dr. McGowan. In their motion, the Red Cross and Dr. McGowan assert three defenses: (1) that the doctrines of issue and claim preclusion bar the Bartons' claims; (2) that the statute of limitations contained in the AMLA bars the Bartons' claims; and (3) that the Barton sons' claim for loss of parental consortium is not cognizable under Alabama law. For the reasons set forth below, the motion for summary judgment is denied in part and granted in part.

### I. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." A district court must consider "all the evidence in the light most favorable to the nonmoving party ... and resolve all reasonable doubts in favor

---

1. The Red Cross and Dr. McGowan have properly invoked the removal jurisdiction of the court. Pursuant to 36 U.S.C.A. § 2, the federal courts have original jurisdiction over all cases to which the Red Cross is a party. *See American National Red Cross v. S.G.,* — U.S. —, —, 112 S.Ct. 2465, 2472, 120 L.Ed.2d 201 (1992). Thus, the Red Cross properly removed this action from state court to federal court under the federal removal statute, 28 U.S.C.A. § 1441. Jurisdiction over Dr. McGowan is based on this court's supplemental jurisdiction. 28 U.S.C.A. § 1367.

2. The court does not reach the additional causes of action charged by plaintiffs in their second amended complaint.

of the non-moving party." *Earley v. Champion International Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990) (citations omitted). Because this action is based on a state cause of action, it is similar to an action based on diversity-of-citizen jurisdiction and state substantive law applies.

## II. BACKGROUND

On July 24, 1988, Mrs. Barton was admitted to the Southeast Alabama Medical Center in Dothan, Alabama for treatment by Dr. John P. Moore, Jr. Mrs. Barton was given a transfusion with blood taken from a donor provided by the American Red Cross. Dr. Eoline McGowan was responsible, at least in part, for supervising the Red Cross's procedures for screening blood from volunteer donors in 1988 in Alabama. On June 9, 1990, the Red Cross discovered that the donor whose blood had been used in Mrs. Barton's transfusion had tested positive for HIV. The Red Cross did not notify the Medical Center of the donor's HIV status until December 13, 1990.

Dr. Moore informed Mrs. Barton on January 3, 1991, that the blood donor had tested positive for HIV but told her that he was "99% sure that [she] had nothing to worry about." Mrs. Barton took a blood test and was informed by Dr. Moore on January 8 that her blood tested positive for HIV. However, Dr. Moore also told her that false positives were possible and that the results could not be considered final until a California laboratory conducted a more sophisticated test, known as a "Western blot" test. It is unclear precisely when Mrs. Barton was informed of the results of the Western blot test. A report by the Alabama Reference Laboratory, dated January 12, states that the results of the Western blot test "should be available within 7 days." A letter from another physician, Dr. Coe, to Dr. Moore, dated January 23, states: "As we have discussed, [Mrs. Barton] is, indeed, HIV positive confirmed with Western blot study." Mrs. Barton alleges that she could not have learned of the Western blot test results earlier than January 20 and believes that Dr. Coe's office orally informed her of the results on January 22.

Mrs. Barton filed suit against the Red Cross, Dr. McGowan, the Southeast Alabama Medical Center, and Dr. Moore on July 18, 1991, in the Circuit Court of Houston County, Alabama. On August 22, Mrs. Barton amended her complaint to add claims for loss of consortium by her husband and her two minor sons. That same day, the state court granted a motion to dismiss filed by the Medical Center and Dr. Moore on statute-of-limitations grounds. Also on August 22, the Red Cross and Dr. McGowan removed the case to federal court. Subsequently, these two defendants moved for summary judgment.

## III. DISCUSSION

The Alabama Supreme Court recently decided that the AMLA applies to claims against the Red Cross. The court found that the Red Cross is a "health care provider" as the term is defined in the Act, Ala. Code 1975 § 6–5–542. *Wilson v. American Red Cross*, 600 So.2d 216, 218–19 (Ala. 1992). The Act also governs claims against Dr. McGowan, by virtue of her status either as a physician or as a "health care provider" supervising the Red Cross's blood screening procedures. It therefore follows that the Bartons' claims are governed by the AMLA.

As stated, the Red Cross and Dr. McGowan present three defenses to the Bartons' AMLA claims: (1) whether the doctrines of issue and claim preclusion bar the Bartons' claims; (2) whether the statute of limitations contained in the AMLA bars the Bartons' claims; and (3) whether the Barton sons' claim for loss of parental consortium is cognizable under Alabama law.

### A. Claim and Issue Preclusion

The Red Cross and Dr. McGowan contend that the Bartons are barred by the doctrines of claim preclusion and issue preclusion from relitigating the statute of limitations issues decided by the state court before the case was removed to federal court. Alabama law applies in determining the preclusive effect to be given an Ala-

bama state court judgment in an action based on state law. *See Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985). The Red Cross and Dr. McGowan argue that the claims against Southeast Alabama Medical Center and Dr. Moore were also governed by the AMLA and were dismissed pursuant to the AMLA's statute of limitations. Therefore, according to the Red Cross and Dr. McGowan, the statute of limitations issue was already decided in a prior action and cannot be relitigated under Alabama's doctrine of issue preclusion. Similarly, they maintain that the Bartons' causes of action are barred by Alabama's doctrine of claim preclusion.

■ According to Alabama law, for either issue preclusion or claim preclusion to apply, the prior judgment must have been a final judgment. *Shelby County Planning Comm'n v. Seale*, 564 So.2d 900, 901–02 (Ala.1990); *Chandler v. Commercial Union Ins. Co.*, 467 So.2d 244, 251 (Ala.1985). As the Eleventh Circuit Court of Appeals has noted, "Under Alabama law, finality for purposes of preclusion is equated with finality for purposes of appeal." *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir.1989). Rule 54(b) of the Alabama Rules of Civil Procedure, which governs finality of judgments, provides that "any order ... which adjudicates ... the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." The state court order here dismissed the claims against only two of the four defendants. Thus, the order adjudicated the rights and liabilities of fewer than all the parties and was not a final judgment under Rule 54(b).

Rule 54(b) does provide an exception allowing a court to direct final judgment as to fewer than all the parties, but the court must make an "*express* determination that there is no just reason for delay." *Tubbs v. Brandon*, 366 So.2d 1119, 1120 (Ala.

1979) (emphasis in original); *see also* Ala. R.Civ.P. 54(b), Committee Comments. If the trial court fails to make this express determination, a judgment "against fewer than all defendants where there are multiple defendants is not a final judgment...." *McKiever v. King & Hatch, Inc.*, 366 So.2d 264, 264 (Ala.1978).

The state court noted only that it had granted the motion to dismiss made by the Medical Center and Dr. Moore. The court failed to make the express determination required by Rule 54(b) for an order to constitute a final judgment. Therefore, neither the doctrine of issue preclusion nor claim preclusion can apply to the state court order because it is not a final judgment under Alabama law.

An alternative reason for not applying preclusion here is that the state court order was not part of a separate action. Rather, the state court order is still part of the federal action at hand. The Alabama Supreme Court has indicated that res judicata does not apply between claims in the same action. Recently, in rejecting such a defense, the court wrote that

"the doctrine of *res judicata* does not apply in this situation, because that doctrine prohibits the *relitigation* of all matters that were or could have been litigated in a *prior* action. [But h]ere, the complaint of [plaintiff] and [defendant's] counterclaim and third-party complaint were litigated together."

*Stone v. Gulf American Fire and Casualty Co.*, 554 So.2d 346, 372–73 (Ala.1989) (emphasis in original) (internal citation omitted), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). As noted above, Alabama law applies in determining the preclusive effect to be given an Alabama state court judgment in an action based on state law. Thus, res judicata does not apply to the state court order here.

### B. Statute of Limitations

Under the AMLA, an action must be brought within two years "after the act or omission giving rise to the claim." Ala. Code 1975 § 6–5–482(a). However, if the

cause of action is not discovered and could not reasonably have been discovered within that two-year period, "then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier." *Id.* In addition, the AMLA provides that "no action shall be commenced more than four years after the act, omission or failure complained of." Section 6–5–482(b).

### 1. Two-Year Period

■ The statute of limitations period begins to run upon the accrual of the cause of action, which is defined by the Alabama courts as the date "when the act complained of results in injury to the plaintiff." *Colburn v. Wilson,* 570 So.2d 652, 654 (Ala.1990). The Bartons correctly point out that in *Ramey v. Guyton,* 394 So.2d 2, 4 (Ala.1980), the Alabama Supreme Court held that the date of injury is not necessarily the date of the negligent act. However, the parties dispute the import of *Ramey.*

In *Ramey,* the defendant, a doctor, prescribed birth control pills for the plaintiff on her last visit to the doctor. Plaintiff took the pills for approximately one year until she suffered a stroke. The court held that plaintiff's cause of action under the AMLA accrued on the day plaintiff suffered the stroke, not when the prescription was written. The court found that "It was then that the harm occurred," 394 So.2d at 4, and that the writing of the prescription "produced no concurrent injury to the Plaintiff." *Id.* From this holding, the Bartons maintain that a cause of action does not accrue upon the occasion of some contamination within the body unless and until some apparent injury becomes detectable. Applying that holding here, the Bartons argue that, because the exact date of the onset of HIV has not been established and because no injury was apparent until the presence of HIV was confirmed, the accrual date should be the date on which the presence of HIV was confirmed.

The court agrees with the Bartons' reading of the cases. However, applying the case law here, the transfusion did produce a concurrent injury to Mrs. Barton because it was at that point that her blood became contaminated with HIV. The onset of the HIV infection was concurrent with the transfusion itself. In contrast, in *Ramey,* the stroke was not concurrent with plaintiff's ingestion of the pills. Alabama courts have held that the statute of limitations "begins to run whether or not the full amount of damages is apparent at the time of the first legal injury." *Moon v. Harco Drugs, Inc.,* 435 So.2d 218, 220 (Ala.1983) (citations omitted). Therefore, the court holds that the Bartons' causes of action accrued on July 24, 1988, the date of the transfusion, and the filing of the suit in 1991 is outside of the AMLA's two-year provision.

### 2. Fraudulent Concealment

Alternatively, the Bartons argue that the two-year statute of limitations was tolled as to both the Red Cross and Dr. McGowan because the Red Cross fraudulently concealed its knowledge that Mrs. Barton's blood donor had tested positive for HIV. Section 6–2–3 of the 1975 Alabama Code provides that "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Although this section appears on its face to apply only to actions for fraud, "the Alabama courts have construed the tolling provision of § 6–2–3 to apply not only to causes of action for fraud but also to the concealment of the existence of other types of causes of action where a party has a duty to disclose the information upon which the cause of action is based...." *Hovater v. Equifax, Inc.,* 823 F.2d 413, 415 (11th Cir.1987) (citing *Tonsmeire v. Tonsmeire,* 285 Ala. 454, 233 So.2d 465, 467 (1970)).

In *Horn v. Citizens Hospital,* 425 So.2d 1065, 1070–72 (Ala.1982), the Alabama Supreme Court held that the four-year cap on actions contained in the AMLA's § 6–5–482(a) could not be extended by using the fraudulent concealment tolling provision in § 6–2–3. In *Johnson v. McMurray,* 461

So.2d 775 (Ala.1984), however, the court held that fraudulent concealment could be the basis for a medical malpractice cause of action and suggested that Alabama's fraudulent concealment statutes could be used to extend the AMLA's two-year statute of limitations period if the suit was filed within the four-year cap. *Id.* at 778 & n. 3. For the purposes of the following discussion, the court will assume that § 6-2-3 applies to actions under the AMLA brought within the four-year cap and that the Bartons have met the requirements for a fraudulent concealment claim. Nevertheless, even with a tolling of the AMLA's two-year statute of limitations for fraudulent concealment, the court finds that, under the peculiar facts of this case, the Bartons still failed to file their suit in a timely manner under the AMLA's two-year limitations provision.

The first issue to be decided is when the statute of limitations began to run under § 6-2-3. The Bartons argue that the statute of limitations did not begin to run at all until February 4, 1992, the date on which Mrs. Barton discovered that the Red Cross had concealed its knowledge of the blood donor's HIV status. The Bartons point out that § 6-2-3 provides that the claim does not accrue until the "discovery ... of the fact constituting the fraud." The court reads this language as applicable only to cases in which fraud or fraudulent concealment itself is the underlying cause of action. In those cases in which a party is not suing on fraud, but on another cause of action, and is using § 6-2-3 to toll the statute of limitations on the non-fraud cause of action, the language of § 6-2-3 cannot be read literally.

The purpose of § 6-2-3 is to extend a plaintiff's time to file suit when the defendant has fraudulently concealed the cause of action. In the usual case, the defendant will have concealed the cause of action from the time the cause of action arose. Here, as explained above, the cause of action arose on July 24, 1988, at the time of the transfusion. But the alleged fraudulent concealment did not begin at that time. The Red Cross was not aware of the do-

nor's HIV status until June 9, 1990, almost two years later.

The Eleventh Circuit has noted that "In the absence of fraudulent concealment, the cause of action begins to run when it accrues, whether or not the injured party has discovered the tort or injury." *Sellers v. A.H. Robins Co.*, 715 F.2d 1559, 1561 n. ** (11th Cir.1983) (citing *Garrett v. Raytheon Co.*, 368 So.2d 516, 519 (Ala.1979)), *reh'g granted*, 732 F.2d 129 (11th Cir.1984). Because the Red Cross did not engage in fraudulent concealment at the time the causes of action accrued, the statute of limitations on the Bartons' claims began to run at the time of the accrual of the causes of action.

However, the Red Cross did allegedly engage in fraudulent concealment beginning on June 9, 1990, when it learned of the blood donor's HIV status, and continued concealing the donor's status until December 13, 1990, when it communicated the information to Southeast Alabama Medical Center. As the court in *Sellers* explained, "when the plaintiff alleges fraudulent concealment of his fraud cause of action, the statute of limitations is tolled until the plaintiff actually discovers the tort or injury...." Thus, the AMLA's statute of limitations, which began to run on July 24, 1988, stopped running, or was tolled, as of June 9, 1990.

The Bartons would apparently argue that the statute remained tolled until they discovered the fraudulent concealment in February 1992. In the usual case, the plaintiff's discovery of the cause of action will coincide with the discovery of the fraud or fraudulent concealment. This will always be so when fraud itself is the cause of action. In this case, however, Mrs. Barton became aware of her cause of action at some point in January 1991, well before she discovered the Red Cross's fraudulent concealment. The Alabama Supreme Court has held that § 6-2-3 "would toll the running of the statutes of limitation until [plaintiff] discovered, or should reasonably have discovered the injury or cause of action." *Miller v. Mobile County Board of Health*, 409 So.2d 420, 422 (Ala.1981). The

purpose of § 6–2–3, when applied to cases in which the fraud itself is not the basis of the cause of action, apparently is to extend the time to file suit once the cause of action is discovered. Because Mrs. Barton concededly discovered her cause of action no later than January 22, 1991, this court holds that the statute of limitations, which began to run on July 24, 1988, and was tolled on June 9, 1990, resumed running no later than January 22, 1991.

The remaining issue to be decided is when the limitations period finally ended once the statute of limitations resumed running in January 1991. The Red Cross and Dr. McGowan argue that the AMLA two-year limitations period should be applied. They calculate that the two years began on July 24, 1988, and that all but 46 days had elapsed when the period of fraudulent concealment began on June 9, 1990. Therefore, the Red Cross and Dr. McGowan contend that the Bartons had only 46 days in which to sue once the statute of limitations resumed running in January 1991 and that the filing of the suit in July 1991 was outside this 46–day period.

The alternative possibility is that once the statute of limitations resumed running in January 1991, the Bartons had the full two-year limitations period provided in §. 6–2–3. If this period applied, the Bartons' filing of the suit in July 1991 would be well within the statute of limitations period.

Under the peculiar circumstances of this case, the court finds that because the period of fraudulent concealment neither began simultaneously with the accrual of the cause of action nor ended simultaneously with the Bartons' discovery of the cause of action, the AMLA's two-year statute of limitations began running at the accrual of the cause of action, was merely tolled when the fraudulent concealment began, and resumed running again once the Bartons discovered the cause of action. Therefore, the court agrees with the Red Cross and Dr. McGowan that the Bartons had only 46

days left within which to file their suit once Mrs. Barton discovered the cause of action in January 1991. The filing of the suit in July 1991 was therefore outside the AMLA's two-year statute of limitations provision.[3]

**3. Date of Discovery of Cause of Action**

As an alternative to the AMLA's two-year statute of limitations, the AMLA provides that if the cause of action is not discovered and could not reasonably have been discovered within that two-year period, "then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier." § 6–5–482(a). The Red Cross and Dr. McGowan claim that the date of discovery, or at least the date of discovery of facts sufficient to put Mrs. Barton on notice of her cause of action, was no later than January 8, 1991, the date on which Mrs. Barton was first notified that she tested positive for HIV.

The Bartons respond that as of January 8, Mrs. Barton knew only that she possibly was HIV positive. She stated that Dr. Moore told her on January 8 that false positives were possible and that the results could not be considered final until a California laboratory conducted a more sophisticated test, known as a "Western blot" test. Mrs. Barton testified in her affidavit that she is certain that she could not have been told of the Western blot test results before January 20 and believed the date was January 22. Therefore, the Bartons contend that their filing of the suit on July 18 was within the six-month limitations period.

The Alabama Supreme Court has held that "the question of when a cause of action was or should have been discovered is a question of fact for a jury" and when there is conflicting evidence, granting summary judgment on statute of limitations grounds is improper. *Herring v. Shirah,* 542 So.2d 271, 274 (Ala.1988). In *Herring,*

**3.** Because the court concludes that, even with the Red Cross's fraudulent concealment, the Bartons' claims would be time barred under the ALMA's two-year period, the court does not have to reach whether fraudulent concealment by the Red Cross would toll the Bartons' claims as to Dr. McGowan as well. Throughout the above discussion, the court has merely assumed that this would be the case.

the plaintiff was examined by the defendant, Dr. Shirah, for problems relating to a lump in her breast and was told that the lump was nothing to worry about. Almost a year later, plaintiff went to a different doctor, Dr. Naik, who told her after an examination that he suspected that the lump was cancerous. Five months later, Dr. Naik performed a modified mastectomy and the results showed that the lump was cancerous. Plaintiff did not file her malpractice action against Dr. Shirah until almost six months after the mastectomy.

Plaintiff argued that she did not learn of sufficient facts that would reasonably have led to the discovery of her cause of action until after the mastectomy. She contended that "she could not be sure that she had a claim until after the surgery and tests were performed and the lump was confirmed to be cancerous." 542 So.2d at 274. Dr. Shirah argued that plaintiff had sufficient facts that would lead to the discovery of her cause of action at the point at which Dr. Naik examined her and told her the lump might be cancerous. The Alabama Supreme Court held that there was a genuine issue of material fact as to when plaintiff discovered facts to give rise to her claim.

The case here is similar to *Herring.* The Bartons argue that Mrs. Barton could not be sure that she had a claim until after the Western blot test results came back confirming that she was HIV positive. The Red Cross and Dr. McGowan contend that Mrs. Barton had sufficient facts when she was initially informed that she had tested HIV positive. Under *Herring,* when the parties dispute whether the plaintiff has a claim before confirmatory test results become available, the issue is a question of fact for the jury that cannot be decided on summary judgment. Similarly, in *Wright v. Mills,* 590 So.2d 177, 182 (Ala.1991), the court held that summary judgment was improper because the parties presented conflicting evidence as to when plaintiff knew of facts that should reasonably have led to the discovery of her cause of action.

In addition, had a plaintiff in Mrs. Barton's position filed suit before she was certain that she was HIV positive and had the confirmatory test subsequently proven negative, the attorney could possibly be subject to disciplinary action under Ala. R.Civ.P. 11 for signing a pleading for which there was not "good ground to support." Under Alabama law, therefore, it is a question of fact for the jury as to when Mrs. Barton discovered her causes of action or had sufficient facts that should reasonably have led to the discovery of her causes of action. Summary judgment on the Bartons' causes of action under the AMLA must be denied.

The Red Cross and Dr. McGowan further argue that, because Mr. Barton's and the Barton sons' loss-of-consortium claims derive out of Mrs. Barton's claims under the AMLA, their claims are barred under the statute of limitations if Mrs. Barton's claim is barred. *See, e.g., Reed v. Stempien,* 475 So.2d 841, 842 (Ala.1985). Since the statute of limitations determination here hinges on a question of fact for the jury, summary judgment for the loss of consortium claims based on the statute of limitations must also be denied.

On a related point, the Red Cross and Dr. McGowan contend that Mrs. Barton, in filing supplemental affidavits, has improperly attempted to create an issue of fact by contradicting her prior testimony in her deposition. In an order dated May 27, 1992, this court granted the Bartons' motion to supplement their summary judgment submissions with a supplemental affidavit of Mrs. Barton. The Red Cross and Dr. McGowan are incorrect in asserting that Mrs. Barton's deposition testimony contradicted her supplemental affidavit testimony. During her deposition, Mrs. Barton explained that she was taking medication and had difficulty remembering exact dates. She could not recall the exact date on which she had been informed of her confirmed HIV positive status. In her supplemental affidavit, she explained that she had subsequently reviewed a letter from Dr. Coe and a lab report and now recalled that she could not have been informed of her Western blot test results any earlier than January 20, 1991. Mrs. Barton's affidavit does not contradict her deposition tes-

timony because she simply stated she could not recall dates at the time of her deposition but did recall that it was "all in January." In addition, she satisfactorily explained how she later was able to recall the dates.

### C. Loss of Parental Consortium Claims

The Barton sons urge this court to recognize their claim for loss of parental consortium. The amended complaint adding this claim did not clarify whether "loss of consortium" included a claim for "loss of services" or solely covered "loss of society." The Bartons' briefs and second amended complaint, which was filed subsequent to the summary judgment motion, make clear that the sons seek to recover both the loss of services and loss of society of their mother. For purposes of the following discussion, the term "loss of consortium" will be used to refer to both "loss of services" and "loss of society" unless otherwise indicated.

The Barton sons concede that the Alabama courts have not addressed whether a cause of action for loss of parental consortium is cognizable under Alabama law. The Red Cross and Dr. McGowan argue that because loss of parental consortium has not yet been recognized in Alabama, the sons have failed to state a claim upon which relief can be granted. As a federal court hearing a state cause of action, this court must interpret Alabama law as it believes Alabama's highest court would rule. The Alabama Supreme Court recently hinted that it would be willing to recognize a cause of action for loss of parental consortium when it noted that "a growing number of jurisdictions have recognized a cause of action in minor children for the loss of parental consortium." *Carbon Hill Mfg., Inc. v. Moore,* 602 So.2d 354, 355 (Ala.1992) (citing Note, Donald L. Dionne, *Minors Have Independent Cause of Action for Loss of Parental Consortium Resulting From Injuries Inflicted Upon a Parent by Negligent Third Party,* 18 Cumb.L.Rev. 473, 474 (1988)).

The Red Cross and Dr. McGowan point out that the traditional majority view rejects recognizing a cause of action for loss of parental consortium. *See* Annotation, *Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent,* 11 A.L.R.4th 549, 552 (1982). They also assert that many of these courts have determined that it is wiser to leave the creation of such a claim to the legislative branch. *See, e.g., Zorzos v. Rosen,* 467 So.2d 305, 307 (Fla.1985). The other factors cited by courts in refusing recognition are dual recovery problems, increased litigation with defendants being subjected to a multiplicity of actions, and the speculative nature of the damages for the loss of intangibles such as love, affection, and attention. Annotation, 11 A.L.R.4th at 552.

These same factors were cited as reasons not to recognize a wife's cause of action for loss of her husband's consortium. In *Swartz v. United States Steel Corp.,* 293 Ala. 439, 304 So.2d 881 (1974), the Alabama Supreme Court, in recognizing a wife's cause of action, addressed and rejected each of these arguments in turn. As to invading the legislative function, the court stated that "Throughout the years the courts have engaged in housekeeping chores in tidying up the common law of their respective jurisdictions, discarding outworn concepts and refurbishing their common law to meet prevailing social needs." *Id.* at 885. The court also explained that "Legislative action, could, of course, be taken, but we abdicate our own function, in a field peculiarly non-statutory [tort law], when we refuse to reconsider an old and unsatisfactory court-made rule." *Id.* (citations omitted). The court also easily dismissed concerns about double recovery and multiplicity of actions, noting that "Alarm in this regard appears fanciful." *Id.* at 886. The court found that any problems could be resolved through proper procedural safeguards. For example, the consortium claim will usually be presented together with the negligence claim, and if separate actions are brought the defendant can move to join them. In addition, the court limited the retrospective application of the wife's new cause of action for loss of consortium to cases in which the husband had not already received damages from settlement or a judgment. *Id.*

Difficulty in assessing damages is a problem in many torts cases, such as assessing damages for pain and suffering, loss of anticipated profits and loss of spousal consortium. This court sees no reason why assessing damages for loss of a parent's love, attention and affection should be more difficult than assessing similar damages between a wife and a husband. As the court in *Swartz* stated, "We

see no reason why the trier of fact should be deemed confronted with insuperable difficulties in assessing damages in a wife's suit for loss of her husband's consortium." 304 So.2d at 887. Moreover, assessing damages for loss of services is often done and such damages can be computed with relative ease.

The court recognizes that allowing a cause of action for loss of a parent's consortium can nevertheless further complicate the calculation of damages in litigation. It is true that the possibility for double recovery is present, at least when the injured parent's spouse is also suing for loss of consortium. Undoubtedly, the loss of consortium that may be recovered by the children may include to an extent the loss of consortium recovered by the spouse. Nevertheless, the children are entitled to their own cause of action. This concern over double recovery should not prevent the cause of action. Instead, courts should carefully instruct the jury not to award overlapping damages.

A further reason offered against recognizing a loss of parental consortium claim is that separate awards to children will have an adverse impact on family relations. This objection is also largely chimerical. As one court found, "when a third party's negligence causes injury to a parent and the child suffers loss of society, the litigation does not typically pit family members against each other." *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690, 694 (1980).

It could be argued that in 1974, when the Alabama Supreme Court first recognized a wife's cause of action for loss of her husband's consortium, the court intended to limit the cause of action to those "within the marriage relationship." *Swartz*, 304 So.2d at 887. It appears, however, that the marriage relationship could be considered to include the parent-child, or immediate family, relationship. A married couple and their children are usually viewed as forming a single entity, the immediate family. Indeed, the Alabama courts have stated that "The atmosphere surrounding the Alabama cases ... pertaining to the rights of parents to sue for the wrongful death of a minor child is highly charged with the common law principles of parental duty to maintain, support and care for children with the reciprocal right in the parent to the children's services." *Adkison v. Adkison*, 46 Ala.App. 191, 239 So.2d 555, 559 *rev'd on other grounds*, 286 Ala. 306, 239

So.2d 562 (1970). In other words, on the one hand, parents have the duty to support their minor children, *Davis v. Gyllenhaal–Davis*, 516 So.2d 665, 666 (Ala.Civ.App. 1987), and, on the other hand, parents may recover for the loss of services of a child who is negligently injured by a third party. *Smith v. Richardson*, 277 Ala. 389, 171 So.2d 96, 100 (1965) (citing *Birmingham Ry. Light and Power Co. v. Chastain*, 158 Ala. 421, 48 So. 85 (1908)); Ala.Code 1975 § 6–5–390 (parents can recover for injury to minor child). It follows from these holdings that the Alabama courts would recognize a reciprocal cause of action, growing out of the immediate family relationship, for, at least, the loss of a parent's services.

In addition, this court believes that Alabama courts would recognize

"society's increased recognition and awareness of children as persons with rights. For example, the United States Supreme Court recognizes children's due process and equal protection rights under the United States Constitution."

*Villareal v. State Dep't of Transp.*, 160 Ariz. 474, 774 P.2d 213, 216 (1989) (citing *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *see also Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973)). Based on the change in the status of children and the modern view that children have rights of their own, it appears that limiting a cause of action solely to the marital relationship is outdated. A host of commentators and courts have explained that the role of children has changed dramatically since the common law rules were first made. For example, one court cogently stated: "In the majority of family situations, children are no longer an economic asset but on the contrary are usually sources of great expenditure on the part of parents." *Shockley v. Prier*, 66 Wis.2d 394, 225 N.W.2d 495, 498 (1975). Another commentator wrote: "The cost-accounting technique for measuring damages—value of services less cost of support—is archaic in a society which is not structured on child labor and the family chore framework of an agricultural community." *Wrongful Death of a Minor Child: The Changing Parental Injury*, 43 Wash.L.Rev. 654, 656 (1968) (quoted in *Shockley*, 225 N.W.2d at 498).

Based on the above observations, this court concludes that the Alabama Supreme Court would recognize a right to loss of parental consortium but only to the extent of loss of services. Although the Alabama

Supreme Court in *Smith v. Richardson* established the right of a parent to recover for loss of services of a child, that court, citing without comment a 1909 case, held that a parent cannot recover damages for the loss of the child's society. 171 So.2d at 100 (citing *Birmingham Ry. Light and Power Co. v. Baker*, 161 Ala. 135, 49 So. 755 (1909)); *cf. Edwards v. United States*, 552 F.Supp. 635, 639–40 (M.D.Ala.1982) (loss recoverable under Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2678, includes loss to children of parental care, counsel, training and education but not loss of parental society). Admittedly, this decision of the Alabama Supreme Court, which followed ancient precedent apparently without taking into account the half-century that had passed, seems outdated and very well could not be followed by the Alabama courts today. Nevertheless, as a decision of Alabama's highest court, this court is bound to follow it. As such, the cause of action for loss of parental consortium is limited to the loss of a parent's services.

Accordingly, for the above reason, it is ORDERED:

(1) That the motion for summary judgment filed by defendants American Red Cross and Eoline McGowan, M.D., on January 15, 1992, be and is hereby granted as to the plaintiffs' claim of "loss of parental society"; and

(2) That the motion be and is hereby denied in all other respects.