**R.A. BARTON, et al., Plaintiffs,**

v.

**AMERICAN RED CROSS, et al., Defendants.**

Civ. A. No. 91–T–1001–S.

United States District Court, M.D. Alabama, S.D.

Feb. 25, 1993.

James M. Prestwood, Prestwood & Prestwood, P.A., Andalusia, AL, for plaintiff.

Jeffrey M. Grantham and Tony G. Miller, Birmingham, AL, for defendants.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiffs R.A. Barton and her husband and two sons charge defendants American Red Cross, Eoline McGowan, M.D., Southeast Alabama Medical Center, and John P. Moore, Jr., M.D., with negligent and wanton failure to screen properly for HIV-infected blood that was given to Mrs. Barton in a transfusion. The Bartons seek relief under the Alabama Medical Liability Act (AMLA), Ala.Code 1975 § 6–5–542, and assert claims for compensatory and punitive damages. The Bartons filed their suit in the Circuit Court of Houston County, Alabama. The state court granted a motion to dismiss filed by the Medical Center and Dr. Moore on statute-of-limitations grounds on August 22, 1991. Later that day, the Red Cross and Dr. McGowan removed the case to federal court. This cause is before the court on several motions. Plaintiffs move to reinstate the Medical Center and Dr. Moore as defen-

dants. The Medical Center and Dr. Moore oppose the motion to reinstate, but in the event they are reinstated they object to this court's jurisdiction over them and move to remand the case to state court. In an unrelated motion, the Red Cross moves to strike plaintiffs' claim for punitive damages. For the reasons set forth below, plaintiffs' motion to reinstate is denied, the Medical Center's and Dr. Moore's motions to remand are denied as moot, and the Red Cross's motion to strike is granted.

## I. BACKGROUND

On July 24, 1988, the Southeast Alabama Medical Center in Dothan,. Alabama admitted Mrs. .Barton for treatment by Dr. Moore. The hospital gave Mrs. Barton a transfusion with blood taken from a donor provided by the American Red Cross. Dr. McGowan was responsible, at least in part, for supervising the Red Cross's procedures for screening blood from volunteer donors in 1988 in Alabama. On June 9, 1990, the Red Cross discovered that the donor whose blood had been used in Mrs. Barton's transfusion had tested positive for HIV. The Red Cross did not notify the Medical Center of the donor's HIV status until December 13, 1990.

Dr. Moore informed Mrs. Barton on January 3, 1991, that the blood donor had tested positive for HIV. Mrs. Barton took a blood test and was informed by Dr. Moore on January 8 that her blood tested positive for HIV. However, Dr. Moore also told her that false positives were possible and that the results could not be considered final until a California laboratory conducted a more sophisticated test, known as a "Western blot" test. It is unclear precisely when Mrs. .Barton was informed of the results of the Western blot test. A report by the Alabama Reference Laboratory, dated January 12, 1991, states that the results of the Western blot test "should be available within 7 days." A letter from another physician, Dr. Coe, to Dr. Moore, dated January 23, 1991, states: "As we have discussed, [Mrs. Barton] is, indeed, HIV positive confirmed with Western blot study." Mrs. Barton alleges that she could not have learned of the Western blot test results earlier than January 20 and be-

lieves that Dr. Coe's office orally informed her of the results on January 22, 1991.

Mrs. Barton filed suit against the Red Cross, Dr. McGowan, the Southeast Alabama Medical Center, and Dr. Moore on July 18, 1991, in the Circuit Court of Houston County, Alabama. On August 22, the state court granted a motion to dismiss filed by the Medical Center and Dr. Moore on statute-of-limitations grounds. Also on August 22, the Red Cross and Dr. McGowan removed the case to federal court. These two defendants then moved for summary judgment on the grounds that the doctrines of issue and claim preclusion barred the Bartons' claims and also that the AMLA's statute of limitations barred the Bartons' claims. On September 29, 1992, this court denied the motion for summary judgment, finding that the state court's order dismissing the Medical Center and Dr. Moore was not a final order under the Alabama Rules of Civil Procedure and therefore neither issue preclusion nor claim preclusion applied. *Barton v. American Red Cross*, 804 F.Supp. 1455, 1457–58 (M.D.Ala. 1992). Based on Mrs. Barton's deposition and affidavit testimony taken after the case was removed, the court found that it is a question of fact for the jury as to when Mrs. Barton discovered her cause of action under AMLA's provision allowing suit to be filed within six months of discovery of a cause of action. *Id.* at 1461–62. Subsequently, the parties filed the motions now before the court. The Red Cross filed its motion to strike on December 8, 1992, plaintiffs filed their motion to reinstate on December 14, 1992, and the Medical Center and Dr. Moore filed their motion to remand on January 11, 1993.

## II. REINSTATEMENT

Under the AMLA, an action must be brought within two years after the act giving rise to the claim. As explained in this court's September 29, 1992 opinion, plaintiffs filed their suit outside of the two-year period. However, if a cause of action could not reasonably have been discovered within the two-year period, the AMLA allows a suit to be brought within six months from either the date of discovery of a cause of action or the

date of discovery of facts which would reasonably lead to discovery of the cause of action. Mrs. Barton filed her suit on July 18, 1991. Thus, if Mrs. Barton discovered her cause of action before January 18, 1991, the filing of her suit would not be within AMLA's six-month discovery period. Plaintiffs claim that the state court erred in finding that the statute of limitations barred the action because there is a genuine issue of material fact for the jury as to when Mrs. Barton discovered her cause of action. Dr. Moore and the Medical Center claim that reinstating them would be unfair because: (1) plaintiffs did not make this date-of-discovery argument before the state court; and (2), once the state court dismissed them, plaintiffs waited 16 months to move for reinstatement.

■ Although plaintiffs style their motion as one to "reinstate" defendants Moore and the Medical Center, the motion is really a request for reconsideration of the state court's dismissal of Dr. Moore and the Medical Center on statute-of-limitations grounds. In cases involving reconsideration of a final judgment, Rule 60(b) of the Federal Rules of Civil Procedure lists a number of reasons for allowing relief. Although the state court's order was not a final judgment, the reasons listed in Rule 60(b) are a useful guide here. The reasons include newly discovered evidence which by due diligence could not have been discovered before the final judgment; and fraud, misrepresentation or other misconduct of an adverse party. Furthermore, on a motion to reconsider, a court ordinarily will not hear evidence that was within the moving party's knowledge at the time of the initial decision. *See DeBruyne v. Equitable Life Assurance Society of the United States*, 920 F.2d 457, 471 (7th Cir.1990).

Before the state court, plaintiffs admitted that on January 3, 1991, Dr. Moore informed Mrs. Barton that the donor whose blood had been used in her transfusion had tested positive for HIV. In their motions to dismiss, Dr. Moore and the Medical Center argued that Mrs. Barton discovered her cause of action on January 3. Plaintiffs' plea of estoppel before the state court mentioned that Mrs. Barton took a test to confirm that she was HIV positive and that the "report on her

test was transmitted to her on or about January 19, 1991." Nevertheless, plaintiffs did not argue that Mrs. Barton discovered her cause of action on January 19. Instead, plaintiffs solely argued that Dr. Moore and the Medical Center should be estopped from raising the statute of limitations defense because they induced Mrs. Barton to delay filing her suit by suggesting they would settle out-of-court. Plaintiffs made no assertions concerning the date on which Mrs. Barton discovered her cause of action. The other evidence concerning the need for a "Western blot" test to confirm that Mrs. Barton was HIV positive was not presented. Having no other argument before it, the state court concluded that the Medical Center and Dr. Moore were not estopped from pursuing their statute of limitations defense and thus that the defense barred plaintiffs' claim. The plaintiffs have not shown—and, indeed, have not argued—that the state court incorrectly decided the narrow issue before it. Therefore, this court will be reluctant to reconsider a court's finding that was correct based on the evidence before it.

In response to the motion for summary judgment based on the statute of limitations filed in this court by Dr. McGowan and the Red Cross, plaintiffs presented Mrs. Barton's affidavit testimony, taken after the case was removed, that Mrs. Barton did not receive test results confirming that she was HIV positive until January 20 at the earliest. Therefore, plaintiffs argued, Mrs. Barton did not learn of sufficient facts that would lead to the discovery of her cause of action until that date. Plaintiffs have not explained why they failed to make this argument before the state court. Certainly, most of the facts concerning the date on which Mrs. Barton discovered her cause of action were within Mrs. Barton's knowledge. Thus, absent a reasonable explanation, which plaintiffs have not put forth, the court will not consider Mrs. Barton's affidavit testimony in determining the motion to reinstate.

Nor do plaintiffs allege that any of the defendants prevented them from asserting the date-of-discovery argument before the state court by failing to disclose relevant information. Plaintiffs do claim that defen-

dants fraudulently concealed for six months the knowledge that the blood donor was HIV positive and that plaintiffs did not discover this fraudulent concealment until February 1992. Lack of knowledge of the fraudulent concealment claim, however, would not have prevented plaintiffs from asserting a date-of-discovery claim before the state court.

Plaintiffs' failure to bring these matters before the state court might be excusable if plaintiffs had moved for reinstatement within a reasonable time after the state court's order. Plaintiffs, however, waited 16 months to move to reinstate Dr. Moore and the Medical Center. Even if plaintiffs had not developed the date-of-discovery argument at the time of the state court dismissal, plaintiffs knew of it by February 28, 1992, when they filed their response to Dr. McGowan and the Red Cross's summary judgment motion. Nevertheless, plaintiffs still waited over nine months from that date to move to reinstate.

Plaintiffs claim that they moved to reinstate within a reasonable time because no avenue was available to challenge the state court's order of dismissal until this court decided Dr. McGowan and the Red Cross's summary judgment motion, which raised the issue whether the state court's order was a final judgment. Plaintiffs are incorrect. Once the case was removed to this court on August 22, 1991, plaintiffs could have brought a motion to reconsider in this court. Ultimately, this is the avenue that the plaintiffs used. Although the issue of the finality of the state court's judgment was at issue in the Red Cross's summary judgment motion, that did not preclude plaintiffs from bringing a motion to reinstate. The finality of the state-court order would simply have been at issue in both motions. Furthermore, even if plaintiffs correctly waited until the court decided the summary judgment motion, plaintiffs have failed to explain why they waited another two and a half months to file the motion to reinstate once the summary judgment motion was decided.

The Eleventh Circuit has described Rule 60(b)(6), which allows relief from a final judgment for "any other reason justifying relief from the operation of the judgment," as a " 'catch-all provision,' and a 'grand reservoir of equitable power to do justice in a particular case.' " *Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir.1992) (per curiam) (quoting *Compton v. Alton Steamship Co.*, 608 F.2d 96, 106–07 (4th Cir.1979)). The equities here, however, weigh in favor of denying the motion to reinstate. Plaintiffs have failed to explain why they did not bring the date-of-discovery issue to the attention of the state court and why they delayed seeking reconsideration of the state court's order in this court. Plaintiffs have not presented any other reasons why justice would require granting the motion to reinstate. Accordingly, plaintiffs' motion to reinstate is denied.

### III. REMAND

The Medical Center and Dr. Moore have also filed motions to remand this cause to state court. Because the court has denied plaintiffs' motion to reinstate, the court need not reach the issue of remand.

### IV. PUNITIVE DAMAGES

■ The Red Cross contends that it is a federal instrumentality and, as such, is immune from any claims for punitive damages. Plaintiffs concede that the Red Cross is a federal instrumentality. *See Department of Employment v. United States*, 385 U.S. 355, 358–60, 87 S.Ct. 464, 466–68, 17 L.Ed.2d 414 (1966). Plaintiffs also concede that, as a general rule, a federal instrumentality has the same immunity from penalties as the United States and therefore is immune from claims for punitive damages in the absence of an express Congressional provision permitting such damages. *See Missouri Pac. R.R. Co. v. Ault*, 256 U.S. 554, 563–65, 41 S.Ct. 593, 597, 65 L.Ed. 1087 (1921); *Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544, 1549–50 (11th Cir.1985).

Nevertheless, plaintiffs argue that, for public policy reasons, the Red Cross should not receive immunity from punitive damages. In *Smith*, the Eleventh Circuit held that federally chartered production credit associations (also known as PCAs), despite being privately organized, owned and operated cor-

porations, remained federal instrumentalities. *Id.* at 1550. The court stated:

"Although punitive damages awards against PCAs would not be paid out of the federal treasury, such awards would interfere with public administration. PCAs fulfill a government mission of channeling credit primarily to farmers. Punitive damages would have to be paid from money that could otherwise be targeted to financing tractor equipment purchases, land expansion, or supply needs. The government's purposes in establishing the PCAs would thus be undercut."

*Id.* (citation omitted). Another court has applied this rationale to the Red Cross, finding that

"the Red Cross fulfills a government mission of providing a supply of blood to citizens in need. Punitive damages would have to be paid from money that could otherwise be targeted to promoting the cause of the Red Cross—that of encouraging donors to give, and collecting and distributing blood to those in need."

*Doe v. American Nat'l Red Cross,* No. 91–03–CIV–3–BR (E.D.N.C. Jan. 30, 1992).

Plaintiffs maintain that the PCAs' function, which is to channel credit to farmers, cannot be compared with the Red Cross's function, which is to obtain and supply blood. According to plaintiffs, the Red Cross's function also includes a public health and safety responsibility to ensure that the blood it supplies is not contaminated. Plaintiffs claim that the Red Cross failed to exercise due care in screening the blood given to Mrs. Barton and then waited for six months to inform her that she was given HIV-infected blood. The availability of punitive damages, according to plaintiffs, would deter the Red Cross from acting in a manner that jeopardizes its mission to provide safe blood. Plaintiffs suggest that the need for protection of the public welfare must be balanced against the need of the Red Cross to conduct its business. Accordingly, plaintiffs contend that federal instrumentalities that have a responsibility for public health and safety should be excepted from the usual federal immunity from punitive damages.

Despite plaintiffs' attempt to carve out a public health and safety exception to federal instrumentality immunity for punitive damage claims, the court finds no basis for such an exception. If Congress thought it appropriate to exempt a particular instrumentality from punitive damage immunity, it could do so in that instrumentality's charter. Otherwise, neither the courts nor Congress have expressed the need for a public health and safety exception that would apply generally. Indeed, the Federal Tort Claims Act, which waives sovereign immunity under certain circumstances for torts committed by government employees, specifically precludes recovery for punitive damages, 28 U.S.C.A. § 2674, yet makes no exception for government employees responsible for the public health and safety. Similarly, the court finds no basis for plaintiffs' suggestion that the need for protection of the public welfare must be balanced against the need of a federal instrumentality to conduct its business.

Accordingly, for the above reasons, it is ORDERED:

(1) That plaintiffs' motion to reinstate defendants Southeast Alabama Medical Center and John P. Moore, Jr., M.D., filed on December 14, 1992, is denied; and

(2) That the motions to remand by defendants Southeast Alabama Medical Center and John P. Moore, Jr., M.D., filed on January 11, 1993, are denied as moot; and

(3) That the motion by defendant American Red Cross to strike plaintiffs' claims for punitive damages, filed on December 8, 1992, is granted.