**Jon WHITE, Plaintiff,**

v.

**Louis MARTIN, Executive Director of the Connecticut Commission on Human Rights and Opportunities, Epifanio Carrasquillo, Acting Capitol Region Manager, Michelle Harding, Investigator and American Red Cross, Defendants.**

No. 3:98CV00367 (GLG).

United States District Court,
D. Connecticut.

Oct. 13, 1998.

---

James S. Brewer, West Hartford, CT, for Plaintiff.

Diana Garfield, Shipman & Goodman, LLP, Hartford, CT, for American Red Cross, Defendant.

## Memorandum Decision

GOETTEL, Senior District Judge.

In this employment discrimination case, the defendant-employer, the American Red Cross ("ARC"), has moved to dismiss all of plaintiff's claims against it for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below, defendant's motion is GRANTED as to all counts of plaintiff's complaint against it.

### Background

Plaintiff was hired by defendant ARC as a Licensed Practical Nurse ("LPN") in October, 1987. When he received his Registered Nurse ("RN") license in October, 1993, he sought an RN position with ARC. He was promoted into an RN's position in August, 1994. This suit challenges the delay in his promotion and the alleged harassment he claims he endured because of his gender (male) and his sexual orientation (homosexual). Plaintiff continues to be employed by ARC as an RN.

On February 2, 1994, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging gender-based discrimination by defendant ARC in failing to promote him. On or about April 8, 1996, the CHRO investigator Yvonne Duncan issued a Draft Reasonable Cause Finding in the plaintiff's case. Thereafter, plaintiff amended his charge adding claims of retaliation. His case was reassigned to another investigator, defendant Michelle Harding, allegedly at the behest of ARC. On or about December 3, 1996, Harding issued a "Notice of Final Agency Action," which reversed the previous finding and dismissed plaintiff's case on the merits. On February 24, 1998, plaintiff filed the instant suit against ARC, as well as three employees of the CHRO. All defendants have moved to dismiss plaintiff's complaint in its entirety. The instant decision pertains only to the motion to dismiss of ARC. The motion of the CHRO defendants is treated in a separate decision.

## Discussion

### Lack of Subject Matter Jurisdiction over Title VII Claims—Counts Four and Five

Defendant ARC moves to dismiss plaintiff's Title VII claims in Counts Four and Five of plaintiff's complaint for lack of subject matter jurisdiction on the ground that plaintiff has failed to obtain a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), which is a statutory prerequisite to bringing suit in federal court for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* *See* 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Criales v. American Airlines, Inc.*, 105 F.3d 93, 95 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997). The Supreme Court has held that obtaining a right-to-sue letter is not a jurisdictional prerequisite to maintaining a suit under Title VII, but rather a statutory requirement which, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

In this case, the plaintiff alleges only that he "filed through CHRO with the EEOC," although it is unclear whether he simply filed with the CHRO or filed with the CHRO and requested that his charge be dual-filed with the EEOC.[1] Even if the plaintiff did in fact file with the EEOC, it is undisputed that he never obtained a right-to-sue letter.[2] Plaintiff offers no explanation that would justify invocation of the principles of waiver, estoppel, or equitable tolling. *See Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995); *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11 (2d Cir.1994); *Segreto v. Kirschner,* No. 3:95CV00447(GLG), 1998 WL 289145 (D.Conn. Mar, 11, 1998).

Accordingly, we hold that, because plaintiff has failed to exhaust his administrative remedies, his Title VII claims set forth in Counts Four and Five are dismissed without prejudice. *See Brown v. General Electric Co.,* No. 93–CV–527, 1995 WL 340748 (N.D.N.Y. June 6, 1995).

### Failure to Obtain CHRO Release—Counts Six and Seven

Defendant ARC next asks this Court to dismiss plaintiff's state-law discrimination claims brought under the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S.A. § 46a–100, due to plaintiff's failure to obtain a release from the CHRO prior to filing suit.[3] Section 46a–100 provides that "[a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82, alleging a violation of section 46a–60 *and who has obtained a release from the commission* in accordance with section 46a–101, may also bring an action in the Superior Court."[4] (Emphasis added). Section 46a–101 states that "[n]o action may be

1. The CHRO is a deferral agency under which it has a work-sharing arrangement with the EEOC, whereby it is authorized to accept charges for the EEOC. Where both the EEOC and CHRO have jurisdiction, two charges are taken so that the matter may be "dual-filed," thus preserving both the state and federal rights of the charging party. Jay S. Siegel, *Connecticut Labor & Employment Law* 7 (Peter A. Janus, ed.1995). This is often accomplished by the charging party's marking on the CHRO form that he wants to cross-file with the EEOC, and the filing is then done by the CHRO as a matter of administrative practice. *Id.* at 16. It is unclear whether this was done in this case, or not.

2. Because plaintiff never obtained a right-to-sue letter, we have no way of evaluating the timeliness of this suit, which should have been filed within 90 days of the issuance of the right-to-sue letter. We question the timeliness of some of plaintiff's claims, such as ARC's alleged discriminatory refusal to promote, since this suit was filed nearly five years after ARC refused to promote the plaintiff. *See Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that the timeliness of a discrimination claim is measured from the date the claimant has notice of the claim, and is not extended by mere continuity of employment).

3. Plaintiff argues in his response to the motion to dismiss that he wrote the CHRO and requested a release. However, he has offered no proof of this. In fact, we do not even know when this request was supposedly made.

4. Although the statute refers only to "superior courts," the district courts have traditionally exercised supplemental jurisdiction over state employment discrimination claims under state statutes, since these state claims are generally so related to the federal claims that they form part of the same case or controversy. 28 U.S.C.

brought in accordance with section 46a–100 *unless the complainant has received a release from the commission . . . .*" (Emphasis added). This Court has held that subject matter jurisdiction does not exist where a plaintiff has not obtained a release from the CHRO and has, therefore, failed to comply with the clear and unambiguous statutory prerequisite embodied in C.G.S.A. § 46a–101. *Catalano v. Bedford Associates, Inc.,* 9 F.Supp.2d 133, 135 (D.Conn.1998) (Dorsey, J.). *See also Simko v. Ervin,* 234 Conn. 498, 503, 661 A.2d 1018 (1995) (holding that the exhaustion doctrine reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief); *Sullivan v. Board of Police Commissioners,* 196 Conn. 208, 216, 491 A.2d 1096 (1985) (holding that a plaintiff who fails to follow the administrative route that the legislature has prescribed in the FEPA for a claim of discrimination lacks the statutory authority to pursue that claim); *Brewer v. Wilcox Trucking, Inc.,* No. CV 9704795468, 1997 WL 688778 (Conn.Super. Sept.26, 1997) (refusing to create an exception to the statutory requirements of the FEPA that the plaintiff obtain a release prior to filing suit).

Plaintiff argues, however, that exhaustion is not required where the administrative agency cannot provide all of the requested relief. In *Catalano,* this Court addressed this same argument and held:

> In discrimination cases under the CFEPA, Connecticut's Superior Courts are split over application of an "adequate administrative remedy" exception to the exhaustion doctrine. The Connecticut Supreme Court has not addressed this issue. The better reasoned cases hold that a plaintiff

must pursue his claim through the CHRO if the CHRO can provide some, even if not all, of the requested relief. . . . The exhaustion requirement would be meaningless if a plaintiff could avoid the statutorily prescribed process by seeking a remedy unavailable through the CHRO.

9 F.Supp.2d at 135–36 (citations and footnote omitted). Thus, this Court held that the *Catalano* plaintiff was required to exhaust his administrative remedies. *Id.*

We concur with the reasoning in *Catalano,* and hold that this Court lacks subject matter jurisdiction over plaintiff's CFEPA discrimination claims due to the plaintiff's failure to obtain a release in accordance with the clear language of C.G.S.A. § 46a–101, even though some of the relief sought by plaintiff in his CFEPA counts is relief that the CHRO could not have granted (such as punitive damages).[5] *See also Hultgren v. First Fidelity Bank,* No. 3:95CV2510(AHN), 1997 WL 766879, at *7 (D.Conn. Dec.2, 1997). Therefore, Counts Six and Seven are dismissed without prejudice.

### Count Eight

Plaintiff has indicated that he is withdrawing this count of his complaint and, therefore, we do not consider the merits of defendant's motion to dismiss this count.

### Plaintiff's State Common–Law Claims— Counts Nine through Twelve

Plaintiff has asserted state-law claims for "recklessness and maliciousness" (Count Nine), negligence (Count Ten), negligent infliction of emotional distress (Count Eleven), and intentional infliction of emotional distress (Count Twelve). Defendant ARC moves to dismiss these four counts for failure to state a claim upon which relief may be granted.[6]

---

§ 1367(a). *See, e.g., Gorman v. Hughes Danbury Optical Systems,* No. 3:93CV2163 (WWE), 1998 WL 164765, at *5 (D.Conn. Mar.13, 1998); *Hultgren v. First Fidelity Bank,* No. 3:95CV2510(AHN), 1997 WL 766879, at *7 (D.Conn. Dec.2, 1997); *Godfrey v. Perkin–Elmer Corp.,* 794 F.Supp. 1179 (D.N.H.1992).

**5.** There is considerable debate as to whether the American Red Cross can be sued for punitive damages. *Compare Doe v. American Nat'l Red Cross,* 847 F.Supp. 643, 649 (W.D.Wis.1994) (striking claims for punitive damages); *Barton v. American Red Cross,* 826 F.Supp. 407, 411 (M.D.Ala.1993) (same), *aff'd,* 43 F.3d 678 (11th

Cir.1994) (Table), *cert. denied,* 516 U.S. 822, 116 S.Ct. 84, 133 L.Ed.2d 41 (1995); *with Doe v. American Nat'l Red Cross,* 845 F.Supp. 1152, 1158 (S.D.W.Va.1994) (refusing to strike claims for punitive damages). However, given our holding in this case, that is an issue we need not address.

**6.** Having dismissed all of plaintiff's claims upon which our federal jurisdiction is based, we could decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss them on that basis. *See* 28 U.S.C. § 1367(c)(3). However, because these claims are asserted

As to Count Nine, defendant ARC states that Connecticut does not recognize a tort of "recklessness and maliciousness." Plaintiff has not responded to the motion to dismiss this count. We agree with the defendant and dismiss Count Nine.

Count Ten is a claim for negligence against ARC for discriminating, disciplining, denying promotions, and harassing the plaintiff without legal cause or justification; and for failing or refusing to act to prevent the disciplining and harassing the plaintiff without legal cause of justification.[7] Defendant ARC asserts that Connecticut does not recognize negligence claims in the employment context.[8] While defendant's assertion is overbroad,[9] it is generally true that Connecticut courts have not allowed an at-will employee to invoke principles of negligence to turn an at-will employment relationship into one that can only be terminated for cause. Thus, in *Morris v. Hartford Courant Co.*, 200 Conn. 676, 513 A.2d 66 (1986), the Connecticut Supreme Court held that an at-will employee could not recover from his employer based upon a claim of negligent investigation of alleged misconduct by the employee. Other Connecticut courts have rejected claims for negligent performance appraisals. *Burnham v. Karl & Gelb, P.C.*, 50 Conn.App. 385 (1998). *See also Wormley v. Blue Cross Blue Shield of Connecticut, Inc.*, No. 31 40 88, 1992 WL 361490 (Conn.Super. Nov.23, 1992) (holding that where an employment contract is terminable at will, it is difficult to see where a breach of duty of care would arise between the parties, the breach of which would constitute actionable negligence); *Pace v. Bristol Hospital*, No. CV 94–0461146S, 1994 WL 669595 (Conn.Super.

Nov.4, 1994) (finding no duty to perform a diligent investigation before discharging the plaintiff, an at-will employee).

Although Connecticut has recognized a narrow public policy exception to the traditional at-will employment doctrine, *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480, 427 A.2d 385 (1980), the courts have stressed the narrowness of this exception and that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. *Parsons v. United Technologies Corp.*, 243 Conn. 66, 79, 700 A.2d 655 (1997). *See also Atkins v. Bridgeport Hydraulic Co.*, 5 Conn. App. 643, 501 A.2d 1223 (1985). Plaintiff in this case has not alleged any violation of public policy. He alleges only that ARC was negligent for discriminating, disciplining, denying promotions, and harassing the plaintiff without legal cause or justification; and for failing or refusing to act to prevent the disciplining and harassing the plaintiff without legal cause of justification. Plaintiff had statutory claims available to him for the discrimination and harassment based upon his gender, which he cannot circumvent by asserting a common-law negligence claim. *Murray v. Bridgeport Hospital*, 40 Conn. Supp. 56, 60, 480 A.2d 610 (1984). To the extent that he is asserting any other type of harassment, or negligence in discipline, or failure to promote, these negligence claims are not cognizable under Connecticut law, which recognizes and upholds the at-will nature of the employment relationship, except in limited circumstances not presented herein. Therefore, we grant the defendant ARC's motion to dismiss Count Ten.

---

against the state CHRO defendants as well, and because of the apparent lack of merit in the claims, we choose instead to consider the merits of defendant ARC's motion to dismiss these claims.

7. Although plaintiff's negligence count contains other allegations of negligence, these do not pertain to ARC.

8. Had plaintiff's claim arisen prior to the July 1, 1993 amendment to Connecticut's Workers' Compensation Act, which excludes "a mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease" and "a mental or emotional impairment

which results from a personnel action, including, but not limited to, a transfer, promotion, demotion or termination," C.G.S.A. § 31–275(16)((B)(ii), (iii)), it would have been barred by the exclusivity provision of the Workers' Compensation Act. However, after 1993, plaintiff's claims of emotional distress, which do not arise out of a physical injury, are no longer covered. *See Bennett v. Beiersdorf, Inc.*, 889 F.Supp. 46, 50 (D.Conn.1995).

9. For example, Connecticut courts have recognized claims for negligent infliction of emotional distress against an employer. *See, e.g., Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180 (1978).

■ Count Eleven attempts to set forth a claim for negligent infliction of emotional distress. The Connecticut courts have recognized this tort in an employment context only "based upon unreasonable conduct of the defendant in the termination process." *Parsons*, 243 Conn. at 88–89, 700 A.2d 655. *See also Malik v. Carrier Corp.*, 986 F.Supp. 86, 91–92 (D.Conn.1997). Plaintiff is still employed by the Red Cross. Therefore, plaintiff cannot state a claim for negligent infliction of emotional distress, and this count will be dismissed.

■ Count Twelve is a claim for intentional infliction of emotional distress. Under the law of Connecticut, the plaintiff must prove (1) that the defendants knew or should have known that emotional distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) their conduct was the cause of the plaintiff's distress; and (4) the resulting emotional distress to the plaintiff was severe. *DeLaurentis v. City of New Haven*, 220 Conn. 225, 266–67, 597 A.2d 807 (1991); *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). This Court has previously held that whether a defendant's conduct can be characterized as "extreme or outrageous" is for determination by the Court in the first instance. *Kintner v. Nidec–Torin Corp.*, 662 F.Supp. 112, 114 (D.Conn.1987); *Reed v. Signode Corp.*, 652 F.Supp. 129, 137 (D.Conn.1986); *Collins v. Gulf Oil Corp.*, 605 F.Supp. 1519, 1522 (D.Conn.1985). *See Restatement (Second) of Torts* § 46, comment *h* (1965). However, if reasonable minds could differ as to whether the conduct alleged was extreme or outrageous, this claim must be submitted to the jury.

■ In this case the plaintiff has alleged in the most general of terms that ARC discriminated against him, disciplined him, denied him a promotion, and harassed him. These allegations fall short of misconduct which exceeds "all bounds usually tolerated by a decent society." This is not a matter on which reasonable minds could differ. Plaintiff has failed to alleged conduct so egregious as to be encompassed by the tort of intentional infliction of emotional distress. Therefore, we dismiss this last count of plaintiff's complaint.

*Conclusion*

Having dismissed each of the counts asserted against ARC, we need not reach the last issue raised by ARC, that being whether plaintiff is entitled to a jury trial against ARC and whether plaintiff can recover punitive damages against ARC.

Therefore, defendant American Red Cross' Motion to Dismiss **[Doc. # 9]** is GRANTED in all respects and plaintiff's complaint against the American Red Cross is dismissed.

SO ORDERED.